BENNETT WARNER vs. JOSEPH H. BENNETT AND OTHERS.

A deed conveyed to the grantees, their heirs and assigns for ever, a piece of land as a site for a school-house; the deed containing the following provision: " The conditions of this deed are such, that whenever the premises shall be converted to any other use than those named, and the grantees shall knowingly persis. therein, the grantees forfeit the right herein conveyed, upon the grantor paying to them the appraised value of such buildings as may be thereon standing." Held that this provision of the deed was a condition subsequent, and not a limitation, and that the estate of the grantees would continue, after condition broken, until an entry by the grantor or his heirs.

Held also that the provision as to payment of the appraised value of the buildings did not in any manner affect the right or necessity of entering for condition broken, but only superadded to the necessity of the entry, that of also paying the value of the buildings to make the entry effective.

Held also that if the grantees should refuse to agree with the grantor in the appointment of appraisers, the latter could procure an appraisal without their concurrence, and that a resort to a court of equity for this purpose was not necessary.

And a court of equity would not have the power to compel the grantees to join in the appointment of appraisers, or to make an appraisal itself.

A court of equity never lends its aid to enforce a forfeiture.

A right of entry for condition broken is not assignable.

BILL in equity.   The principal allegations of the bill were as follows:

That on the 7th day of March, 1834, Eliphalet Tomlinson, then in full life but since deceased, being anxious to aid in the erection of a house for a high school, to be used by an association known by the name of the Upper Village High School Association of New Preston, said house to be used by said association for educational, religious and other public purposes, and for no private use, did make and execute his conditional deed to Joseph H. Bennett and Johnson C. Hatch, and other stockholders of said association, which deed was in substance as follows: "To all people to whom these presents shall come: Greeting.   Know ye, that I, Eliphalet Tomlinson, of &c., for the consideration of twenty-five dollars received to my full satisfaction of Johnson C. Hatch, Joseph H. Bennett, and other stockholders, associated for the purpose of establishing a high school, and for providing a house for the accommodation of said school, for religious meetings and for public purposes, and in the name of the Upper Village High School Association of New Preston, do give, grant, bargain, sell and confirm unto the said Hatch, Bennett and others, a certain piece of land situated in New Preston Society, and bounded as follows: [describing the land.]   To have and to hold the above granted and bargained premises, with the appurtenances thereof, unto them the said grantees, their heirs and assigns for ever, to them and their own proper use and behoof."   The deed contained the usual covenants of seizin and warranty, and the following condition was indorsed upon it.   "The conditions of the within deed are such, that whenever the within named premises shall be converted to any other use than those named within, and the within grantees shall knowingly persist in the use thereof for any purpose whatever, except such as are described in said within deed, the said grantees forfeit the right herein conveyed to the within described premises, upon the grantor paying to the said Hatch and Bennett, and other stockholders, the appraised value of such buildings as may be thereon standing; and it is further understood and agreed that the said grantees are to support one-half of the fence between

the within described premises and my land on the north thereof." Which deed was executed by the said Eliphalet Tomlinson, and said condition was in like manner signed and executed by said Hatch and Bennett. And the petitioner avers that soon after the date of said deed the contemplated school-house was erected by said association, and that a school was kept therein, and public meetings therein held as provided in said deed, for about eighteen years, and that at the expiration of that time, on or about the first day of April, 1852, said association abandoned said house and premises so deeded, so far as the uses named in said deed are concerned, and that said association has never, from the time of said abandonment, resumed the occupation or possession of said house or land for educational, religious or other public uses of any sort whatever. And your petitioner avers that the said Joseph H. Bennett has, with the advice and consent of the other respondents, ever since the said abandonment, to wit, for the last eight years and more, occupied said building and premises for his own private uses, and has converted said building to a use totally different from that named in said deed, to wit, has converted said school-house into a store-house for curing and storing tobacco, and to other uses equally private and personal, and has, with the consent of the heirs of said Johnson C. Hatch, and with the consent of said association, all of whom are made respondents to this petition, knowingly persisted in the use of said premises for said purposes, from the said last mentioned date until the present time; so that said premises are by the terms of the condition in said deed forfeited to your petitioner, who represents the said Tomlinson and owns his interest and all the rights reserved by him according to the terms of the said condition; all which was done by the respondents for the purpose of converting said premises to their own private use, and especially to the private use of the said Bennett; that the better to accomplish his object the said Bennett has bought for a sum merely nominal, and now holds, a majority of the shares of stock of said corporation; that said Bennett has possession of all the books, papers, and records of the said association, and refuses to allow your petitioner to examine the same; that your

petitioner did, on the 10th day of May, 1861, notify the respondents, and especially the said Bennett, that the condition of said deed was broken, and that the petitioner had entered into possession of said premises for condition broken, and claimed the reversion in said premises, and did also notify the respondents to meet him, the petitioner, on the fourteenth day of May, 1861, at one o'clock in the afternoon, at the dwelling-house of the petitioner, for the purpose of appointing appraisers of the value of said building, according to the provisions contained in the condition of said deed, but that the respondents utterly neglected and refused to meet him for such a purpose, and still do so refuse; that your petitioner did, on the 30th day of May, 1861, offer to the said Bennett, as well for himself as for the other respondents, the sum of twenty-five dollars, in good lawful money, which your petitioner considered the fair value of said building, and of the interest of the respondents in said premises, which sum the said Bennett refused to accept of your petitioner for such a purpose. Your petitioner further avers that said Johnson C. Hatch is dead, and that Hannah D. Hatch is his heir at law, and represents his interest in said premises so far as he has any; and that your petitioner is the lawful owner and purchaser of said reversionary interest mentioned in the condition of said Eliphalet Tomlinson's deed; and that your petitioner represents the said Tomlinson's original interest in said premises exclusively, as he is ready to show by deeds duly authenticated and recorded. Your petitioner also says that he is without adequate remedy at law. He therefore prays your Honor to take his case into consideration, and to inquire into the truth of the facts herein before set forth, and on their being found true to declare said premises forfeited to your petitioner, and to order and decree the title of said premises to be in the petitioner; and that your Honor would decree that the respondents shall re-convey said premises to your petitioner, upon your petitioner paying to the respondents the value of said building; also, that your Honor would cause said value to be duly ascertained by finding of the court, or by a committee appointed by your Honor for that purpose, or in some other proper way; also, that said Joseph

H. Bennett, and the other respondents, be ordered to bring into court, for the inspection of your Honor and of the petitioner, the books, records, and exhibits of said association; and that the court would grant such other relief as shall to justice appertain."

The respondent Bennett alone appeared to defend, and filed an answer denying the truth of the allegations of the bill. The superior court (*Dutton, J.,*) found the allegations of the bill to be true, appointed appraisers to assess the value of the building on the premises, who should make report to the court at a future term, and decreed that on the payment or tender of the value thus fixed by the petitioner to the respondents, all the title and interest of the respondents in the premises should become vested in the petitioner.

The respondent Bennett filed a motion in error and brought the record before this court for revision.

*E. W. Seymour,* for the plaintiff in error.

1. The condition in the deed is a condition subsequent. It is intended "to defeat an estate already created by some subsequent act." 1 Spence Eq., 152; 1 Swift Dig., 92.

2. The estate created by the deed would continue, and the title to the property remain fully vested in the grantees, until the proper person took advantage of the breach of the condition, and made either an entry or claim in order to avoid the estate. 1 Swift Dig., 92; *Bowen* v. *Bowen,* 18 Conn., 535; *Bowman* v. *Foot,* 29 id., 331; 2 Greenl. Cruise, 32; 1 Washb. on Real Prop., 62, 451. The neglect to perform the condition does not *ipso facto* determine the estate, it only exposes it to be defeated and determined at the election of the grantor and his heirs, to be signified by some act equivalent to an entry at common law. *Ludlow* v. *N. York & Harlem R. R. Co.,* 12 Barb., 440.

3. None can take advantage of the breach of a condition expressed but parties and privies in right and representation, as heirs, executors and administrators of natural persons, and successors of bodies politic. 1 Swift Dig., 93; *Hooper* v. *Cummings,* 45 Maine, 359; 1 Washb. on Real Prop., 213.

Such heirs, executors, &c., would have a right of entry for breach of condition, but such right is not assignable. 4 Greenl. Cruise, 89; 4 Kent Com., 122; 1 Spence Eq., 153. Where, after condition annexed, the reversionary interest is conveyed to a third party, the condition is gone for ever. The assignee can not enter for the breach, for only the original grantor or his heirs can enter, and the original grantor can not because he has parted with all his interest. *Hooper* v. *Cummings*, supra.

4. If the condition had been broken before any subsequent conveyance of the property it would be of no importance, since it is not pretended that there was any entry or claim of right by Tomlinson or his representatives. After the condition was broken there was only at best the perfected right to enter, which as we have seen is not assignable. The estate of the grantees continued as before, and the law permits it to endure until the person who has the right takes advantage of the breach and makes entry or claim in order to avoid the estate. It does not appear but that the reasons which suggested the condition had ceased to exist, and that it was Tomlinson's intention never to take advantage of the breach.

5. A court of equity will never interfere to enforce a forfeiture. 2 Story Eq. Jur., § 1319; 4 Kent Com., 125; *Livingston* v. *Tompkins*, 4 Johns. Ch., 415. In this case there is no occasion for the interposition of a court of equity, nor does the petition itself show a necessity for it; but it is manifest that the petitioner has adequate remedy at law for whatever rights he has.

*Graves*, with whom was *Hollister*, for defendant in error.

1. The provision in the deed from Tomlinson to Hatch, Bennett and others, contains a limitation of the estate, and is not in the nature of a condition, intended "to defeat an estate already created by some subsequent act." This is proved by the special contract annexed to the deed, to wit, "the said grantees forfeit the *right* herein conveyed to the within described premises, upon the grantor paying to the said Hatch and Bennett and other stockholders the appraised value of such

*buildings* as may be thereon standing." This contract was signed by both parties, who agreed that nothing more should be required of the grantor to revest the estate in him except to pay the appraised value of the buildings, which appraised value can only be ascertained by resort to a court of equity, as no mode of fixing the appraisal is provided in the instrument.

2. This grant, though in the form of a deed, is yet nothing more than a contract, giving the respondents an easement in the property, limited by their occupancy for special purposes and to be ended as soon as they ceased such use, and the *buildings* not the *land* were to become vested in the grantor upon his making the required payment as therein stipulated. The parties in the contract use the word "*right*" instead of "estate"—a word of limitation and tantamount to the word "easement."

3. But the respondents, as found by the court, abandoned the house and land in 1852, and never have since resumed the occupation of either, thus waiving all right to insist upon an entry being made if any such was necessary; and they continue their abandonment to this time, for the association suffer a default, and no one comes into court but Joseph Bennett, who is to all intents and purposes an interloper. He does not pretend to represent or appear in behalf of the association, but simply in his individual right. What rights in equity has he here?

4. Bennett is estopped from claiming that we must make entry upon the land before we can claim to have the building appraised and the title decreed in us, by his express agreement that the interest of the respondents should be determined and settled in that special mode and not otherwise.

5. The interest of Tomlinson, under which he had the right of entry, could be assigned in equity. Such assignments are sustained in equity even when not good at law. A mere possibility is assignable in equity. 1 Swift Dig., 92; 2 Cruise Dig., 452; 4 id., 523; *Chandos* v. *Talbot*, 2 P. Wms., 606.

SANFORD, J. In our opinion the conveyance from Tomlinson to Bennett and others was of a fee simple estate upon condition expressed in the deed. The instrument is a common deed of bargain and sale to the grantees, their heirs and assigns forever, for certain uses specified in the deed, which contains the following clause : " The *conditions* of the within deed are such that whenever the within named premises shall be converted to any other use than those named within, and the within grantees shall knowingly persist in the use thereof for any purpose whatever except such as are described in said within deed, the said grantees forfeit the right herein conveyed to the within described premises, upon the grantor paying to the said Hatch and Bennett and other stockholders the appraised value of such buildings as may be thereon standing."

Blackstone says, estates upon condition " are such whose existence depends upon the happening or not happening of some uncertain event whereby the estate may be originally created or enlarged, or finally defeated." 2 Bla. Com., 151. Littleton says, " it is called an estate upon condition because that the estate of the feofee is *defeasible* if the condition be not performed." Sec. 325. " A condition is created by inserting the very word ' condition ' or ' on condition ' in the agreement." 1 Bouvier's Inst., 285. Conditions are precedent or subsequent. " Precedent are such as must happen or be performed before the estate can vest or be enlarged. Subsequent are such by the failure or nonperformance of which an estate already vested *may be defeated*." 2 Bla. Com., 154. In the case of a condition " the estate or thing is given absolutely without limitation, *but the title is subject to be divested* by the happening or not happening of an uncertain event. Where on the contrary the thing or estate is granted or given until an event shall have arrived, and not generally with a liability to be defeated by the happening of the event, the estate is said to be given or granted subject to a limitation." 2 Bouvier's Inst., 275 ; 2 Bla. Com., 155.

In the case before us the estate vested in the grantees upon the delivery of the deed, to have and to hold to them, their

heirs and assigns, not *until* they should convert the property to other uses than those specified in the deed, nor *so long as* they should continue to use it for the purposes specified, but forever; with a proviso or condition expressed in the deed, that if they should convert the property to other uses they should *forfeit* their estate. The words employed are most appropriate and apt to make an express condition in deed. They are " *the conditions of the within deed are such*," &c. And in Mary Portington's case, 10 Coke, 41 *a*, it is said that " *express words* of condition shall not be taken for a limitation." It has indeed been held that they may be so taken where the estate is limited over to a third person upon the breach or non-performance of the condition; (*Lady Anne Fry's case*, 1 Inst., 202,) but there is no such limitation over in the case before us. So when it is said that " whenever the within named premises shall be converted to any other use," &c., " the grantees *forfeit* the right herein conveyed," it is clearly indicated that the estate thus forfeited by the misappropriation is to be cut off before the time originally contemplated for its termination by the parties.

But it is said that by the terms of the instrument the forfeiture depends not merely upon the misappropriation of the property by the grantees, but also upon the grantor's payment of the appraised value of the building. Suppose it is so, how can that affect the question whether this is a condition in deed or a limitation? No matter how many events the forfeiture depends upon, nor how many individuals must act in producing them, when all those events concur and co-exist the forfeiture is effected as completely as if it depended upon the occurrence of a single event, and the action or omission of a single individual. But the payment for the building was not an event upon which the forfeiture depended. It was merely a duty imposed upon the grantor by the contract in addition to that which the law imposed, to enable him to take advantage of the breach of condition and enforce the forfeiture. His legal obligation to enter for breach of the condition was in no wise affected by it. The estate conveyed by the deed was not an easement, or any other right or interest in the property

ess than a fee simple. The fact that the instrument was signed by both of the parties to it is of no importance. They were neither more nor less bound by the stipulations and conditions contained therein by reason of such signature. The instrument contains no contract on the part of the grantor to pay for the building. The provision upon that subject operates as a qualification of the grantor's right to enforce the forfeiture and regain his property, but operates in no other way. But for that provision the estate granted could have been put an end to, and revested in the grantor, by an entry only ; under that provision an entry could be made *available* only by payment for the building also.

We think it clear that the estate of the grantees was an estate on condition in deed, and that it was an estate upon condition subsequent ; and hence, notwithstanding a breach of the condition by reason of which the estate might have been defeated, it must continue to exist in the grantees, with all its original qualities and incidents, until the grantor or his heirs by an entry (or its equivalent, a continual claim,) have manifested in the way required by law, their determination to take advantage of the breach of condition, to avail themselves of their legal rights, and to reclaim the estate thus forfeited.

The law upon this point is thus laid down by Professor Washburn, in the first volume of his treatise on real property, page 450, with accuracy and precision. " A condition, however, defeats the estate to which it is annexed only at the election of him who has a right to enforce it. Notwithstanding its breach, the estate, if a freehold, can only be defeated by an entry made, and until that is done it loses none of its original qualities or incidents." See also, *id.*, 452 ; 2 Bla. Com., 155 ; 2 Cruise Dig., 42.

But there is in this bill no allegation that an entry for condition broken was ever made. No right to maintain this suit is disclosed, no title to the property is set up, nothing is claimed but a right of entry for condition broken. And for this reason, if for no other, the bill is insufficient, and the decree must be pronounced erroneous.

The allegation in relation to an abandonment of the prop-

erty is immaterial. It is not averred that the grantees had abandoned the property, but only that they had abandoned it " so far as the uses named in said deed are concerned ; " that is, that they had ceased to use the property for the purposes for which the grant was made, not that they had ceased to use it altogether. What effect an absolute and entire abandonment of the property by the grantees would have had upon the legal or equitable rights of this petitioner, we are not now called upon to decide.

Secondly. A right of entry for condition broken is not assignable at common law, and we have no statute which makes it so. 2 Cruise Dig., 4 ; 4 id., 113 ; 1 Spence Eq., 153 ; 1 Swift Dig., 93. The grantor or his heirs only can enter for breach of such condition. 1 Washb. on Real Prop., 451 ; 2 Cruise Dig., 44. The petitioner therefore could have obtained no right or title to make an entry for breach of the condition, and without such entry the estate of the grantees could not be terminated, and no suit at law or in equity could be maintained against the occupant of the property.

Thirdly. If there was a breach of the condition and a forfeiture of the grantees' estate in consequence, and if a right of entry could be and was in fact assigned to the petitioner, still the petitioner could not obtain the relief for which he seeks in a court of equity, because that court never lends its aid to enforce a forfeiture. 4 Kent Com., 130 ; 2 Story Eq. Jur., § 1319; *Livingston* v. *Tompkins,* 4 Johns. Ch., 415.

Lastly. If the right, title or interest, whatever it was, of the grantor or his heirs was assignable, and was assigned to and vested in the petitioner, as he claims, he had no occasion to come into a court of equity for relief. We do not see why he might not have entered for breach of the conditions, requested the respondent to unite with him in procuring an appraisal of the building, if he refused procured such appraisal without the respondent's co-operation, tendered the amount of the appraisal, and brought his action of ejectment. The petitioner's legal right, if he had it, to put an end to the grantees' estate and obtain possession of the property, we think could not have been defeated by the respondent's refusal to co-operate in the

appraisal or accept the tender. See 1 Swift Dig., 295; Powell on Cont., 417; *Whitney* v. *Brooklyn*, 2 Conn., 406. We know of no power in a court of equity to compel the respondent to join the petitioner in procuring an appraisal, nor to make one, in such a case as this; and we see no occasion for the exercise of such a power if it exists. We think the petitioner has an adequate remedy for the enforcement and protection of all his rights at law.

There is manifest error in this record.

In this opinion the other judges concurred; except DUT-TON, J., who having tried the case in the court below did not sit.