Memphis & Charleston Railroad Company vs. W. N. Neighbors et ux.

1. Deeds to Realty: *Subsequent conditions thereof.*

Subsequent conditions are those which operate upon an estate already vested, and render it liable to be defeated.    All that remains in the grantor is the possibility of reverter or right of entry upon condition broken.    The estate will remain defeasible until the condition be performed, destroyed or barred by the statute of limitations, or by estoppel.

2. Same: *What necessary to revest title.*

In order to revest an estate forfeited for conditions broken, the grantor must make an entry, or do some act equivalent thereto — assert a con-

tinual claim, manifesting a determination to take advantage of the breach. The election must be made, either to insist upon the forfeiture, or to waive it.

3. Same: *When equity will interfere to enforce a forfeiture, removing clouds.*
Equity will never lend its aid to enforce a forfeiture or a penalty, or to divest an estate for a breach of a subseqent condition, even though upon the special ground of removing clouds. This statutory jurisdiction does not extend to the adjudication of legal titles under all circum-stances. It can be exercised only for the true owner; one whose title is clearly valid. The validity of complainants' title — their true owner-ship — depends upon an adjudication of the question, as to whether the estate has been forfeited and the title reverted. A court of law is the proper forum to determine this question.

4. Same: Same.
It is not clear on the face of the bill, that the grant was conditional, or that there had been a breach of it, or that complainants are estopped by acquiescence; they present a doubtful title and ask that an adverse title be canceled, which cannot be done.

5. Same: *Rescission for fraud.*
The rescission of a contract for fraud should be claimed within a reasonable time, promptly upon information had of its violation or fraudulent mis-use or diversion, or the right will be lost by acquiescence. Complainant cannot remain silent and without protest permit the erection of build-ings, etc., and afterwards allege these acts as the violation and breach of the contract.

6. Same: *Allegations of fraud.*
Allegations of fraud should be made distinctly and positively, and the specific acts set forth; if made upon information and belief, they should be charged as true, so that if taken as confessed, a decree might be ren-dered granting the relief.

Appeal from the Chancery Court of *Alcorn* County.

Hon. C. C. Cullens, Chancellor.

The facts necessary to a full understanding of the questions involved and decided are set out in the opinion of the court.

The following is assigned for error:

1. That the court below erred in not sustaining the demurrer to the bill, and in not dismissing the bill.

2. The court erred in overruling the demurrer to the bill.

*Harris & George,* for appellant:

The grant is absolute up to the *habendum* clause, that proceeds on this wise: "To have and to hold the same, etc., for the only proper use of said railroad company, in the construction of warehouses, water station, machine shops, wagon yards, and for other depot purposes generally." The bill claims that the estate conveyed by the deed was a defeasible one, liable to be defeated on a condition subsequent, and asserts the following grounds for the defeasance:

1. That the conveyance was made for the purpose of building machine shops, water tank and depot purposes alone.

2. That there has been neglect on the part of the company in erecting the buildings.

3. That the company, in 1865, erected a hotel, and in 1866, an express office.

4. That in 1861, the M. & C. R. R. Co. conveyed one-half interest to the M. & O. R. R. Co.

5. That they have permitted other buildings to be erected thereon.

We insist, first, that the deed contains no condition at all; and, second, if there be a condition at all, it is fully complied with. Conditions subsequent are not favored in law, because they defeat an estate already vested, and especially is this so, when the conveyance is made upon a consideration, valuable in law, wholly unconnected with the condition, it must be a clear case before the court will reach the conclusion, that the condition subsequent was intended. Sheppard's Touchstone, pp. 123 and 133; Rawson *v.* Inh. Uxbridge, 7 Allen, 125; Co. Litt., 204, a; 1 Wood on Con., 290. It is not an estate on condition. 7 Allen, 131. This is purely an attempt to enforce a forfeiture in a court of chancery. In Reynolds *v.* V. & M. R. R. Co., the complainant was in possession, the estate had become vested by record entry, and his only remedy was by suit in chancery to cancel the deed; besides, the performance of the condition was the sole consideration of the grant. In a case like this, no court of equity ever grants relief.

There has been an acquiescence of ten to fourteen years; long enough to bar the entry. Ludlow v. N. Y. & H. R. R. Co., 12 Barb., 440.

*Whitfield & Young*, on the same side, filed a brief and argument.

*Inge & Inge*, for appellees:

The contract must be construed according to the meaning of the parties. Wadlington v. Hill, 10 S. & M., 560; 2 Pars. on Cont., 494,510, 516, 517; 1 Sneed, 148, 149. No particular or technical words are necessary to create a defeasable estate. 2 Washb. on Real Prop., § 4, p. 5; 2 Crabb's Law of Realty, 532; 2 Pars. on Cont., 536; 4 Kent's Com., 133, 135, 145, 154; 2 Johns., 144; 3 id., 394; 1 Sneed, 150; 2 Eng. L. & E., 336; Story on Cont., p. 21, § 29. Words of proviso or recital in a deed will constitute a condition or agreement. 2 Pars. on Cont., 510, 511. Dedication of property to certain uses excludes its appropriation to any other use. Law Library, vol. 19, p. 183; 11 Grey, 362; 101 Mass., 531; 3 Allen, 180. Under the rules of construction, it seems that the estate conveyed was determinable. 4 Kent's Com., 8, 9; 2 W. R. P., 24; 1 id., 77, 79; 2 Blacks. Com., 121–125; Story on Cont., 20. A lease, qualified or conditional estate may be defeated by a nonuser or misuser. 3 Comyn's Dig., 86; 4 id., 16; 11 Grey, 362; 101 Mass., 531; 3 Allen, 180; 11 Paige's Ch., 415; 8 Cow., 000; Freeman's Ch., 59; Graves v. Kilpatrick, MSS. Op., 38 Miss., 594. Where no time is specified for the performance of an act, it must be done within a reasonable time. Story on Cont., 22; 5 Pick., 528. A demurrer will not lie to the relief sought where the party is entitled to any relief from the facts stated in the bill. Mitf. Ch., 41, 43; 1 Johns. Ch., 111; 14 id., 527, 529; 1 Paige's Ch., 284. A bill charging fraud must be answered. 5 How., 365, 562; 5 S. & M., 17; 13 id., 522; 41 Miss., 460, 712; 3 Paige, 246. Fraud vitiates all contracts. 44 Miss., 465.

Simrall, J., delivered the opinion of the court.

This suit in chancery was brought by W. N. Neighbors and others against the Memphis & Charleston Railroad Co. and the

Mobile & Ohio Railroad Co., to cancel and set aside a deed made by William Leslie and Elizabeth, his wife, dated in September, 1855, conveying to the Memphis & Charleston Railroad Co. about eleven and one-half acres of land, at the intersection of the roads in the town of Corinth; and also a deed from the Memphis & Charleston Railroad Co. to an undivided half, or joint use of said parcel of land, to the Mobile & Ohio Railroad Co., executed in 1861.

William Leslie died in 1871, and Elizabeth, his wife, in 1874.

The complainants represent in themselves the character of heirs, both of said William and of said Elizabeth, and prefer their suit accordingly. The bill shows that William Leslie was, on the 29th of September, 1855, owner in fee simple of the land in controversy, together with a large body of adjacent land, and that the eleven and a half acres was conveyed by his deed of that date to the Memphis & Charleston Railroad Co., for the purpose alone that they might thereon erect and construct warehouses, water stations, machine shops, wagon yards and other depot purposes. The words are: "Have this day given, and do, by these presents give, grant, convey and confirm unto the said Memphis & Charleston Railroad Co., and their successors in office," etc. Then follows a description of the premises; after that comes the *habendum* clause: "To have and to hold the same, with all the appurtenances, * * for the only proper use of said railroad company, in the construction of warehouses, water stations, machine shops, wagon yards, and for other depot purposes generally." Then follows a covenant of general warranty, etc.

Complainants allege that said grantee did not erect upon said premises water stations, machine shops, etc., and that the land has not been used for depot purposes generally alone; but the company has erected, or suffered to be erected thereon, a large hotel, an express office and paint shop, etc.

Complainants also allege that William Leslie was induced to make the deed by fraud and representations to him by the company that they would make these erections, which would greatly enhance the value of his other lands.

The defendant demurred to the bill for various causes.

The ground chiefly relied upon by the complainants in their bill is, that the grant by their ancestor to the Memphis & Charlestown Railroad Co. is upon a condition subsequent, which, having been broken, the estate ceases and vests in them as heirs.

Subsequent conditions are those which operate upon an estate already vested, and render it liable to be defeated.   Under the modern system of conveyancing, the estate of freehold passes to the grantee as completely as by the deed, as by the ancient formula of livery of seizin, and remains in him, when subject to defeasance, until resumed by the grantor or his heirs for condition broken. The mere nonperformance of the condition does not defeat the estate.    It is in the election of him who has a right to its enforcement, to insist upon a forfeiture or raise it.    Notwithstanding the breach, the estate abides in the grantee until it is put an end to by entry, or some act by the grantor which is equivalent to it. Until that is done, it loses none of its original qualities or incidents.    2 Blacks. Com., 155 ; 2 Cruise's Dig., 42 ; Warner v. Bennett, 31 Conn., 477.

The estate in fee simple, which passed by the deed of William Leslie in 1855 (conceding it for the present to have been subject to a condition), remained in the grantee precisely as if no such qualification had been annexed to it, until the grantor or his heirs put an end to the estate by entry, or some equivalent act.    The Memphis & Charleston Railroad Co. were seized in fee, and could transmit the estate by alienation.    The estate, however, would continue defeasible until the condition be performed or destroyed, or barred by the statute of limitations, or by estoppel.    4 Kent's Com., 138 ; 2 Blacks. Com., 156.

Strictly speaking, a grant defeasible by condition subsequent, all that remains in the grantor is the possibility of reverter, or right of entry on condition broken.    Such entry, or some tantamount act, is necessary to revest the estate.    Guild v. Richards, 16 Gray, 317–319 ; Nicoll v. N. Y. & E. R. R. Co., 12 N. Y., 131.

So in Warner v. Bennett, 31 Conn., 477, the grantor or his

heirs must "by an entry (or its equivalent, a continual claim) manifest a determination to take advantage of the breach."

The effect of such act is to revest the estate. What before was a bare "possibility of reverter," has become a reclamation of the original estate, and a restoration of it to the grantor or his heirs.

Being restored to his original estate, the grantor may stand upon his legal title and recover the property in a court of law. Indeed that is the proper form in which to sue.

A court of equity declines to lend its aid to enforce a forfeiture. Judge Story lays down the doctrine broadly, " that it will never enforce either a penalty or a forfeiture;" and adds, " therefore it will never aid in the divestiture of an estate for a breach of a covenant on a condition subsequent, although it will often interfere to prevent the divestiture of an estate for a breach of covenant or condition. 2 Eq. Jur., § 1319. In the case of Livingston v. Tompkins, 4 Johns. Ch. 430, Chancellor Kent declared that it was " contrary to the uniform course of the court and its established principles to aid in divesting an estate for breach of a condition subsequent."

In his judgment, he refers to many cases which establish the rule that a defendant is not bound to answer so as to subject himself, either directly or eventually, to a forfeiture or penalty.

In several cases in this state, the subject of conditions precedent and subsequent has been discussed. Some of the cases were at law, some in the probate court, and others in the chancery court. Gadberry v. Sheppard, 27 Miss., 204, was an ejectment to recover the land. Daniel v. Jackoway, Freeman Ch. 63, and Kilpatrick v. Greaves (MSS.), were suits in equity. In these cases there was perhaps an element of trust. In none of the cases which have been brought to our notice, was the question made and considered by the court, whether a bill in chancery could be entertained to establish a forfeiture for condition broken.

The complainants distinctly assert that the grant of their ancestor was subject to a defeasance ; that the grantee had a reasonable time to perform the condition, which expired in 1866 or

1867, and because of such nonperformance and the diversion of the property in part, a right exists in them as heirs to resume the estate and recover the rents.   Having thus shown the legal title to be in them, they insist that the deed of their ancestor, to the Memphis & Charleston Railroad Co., and its subsequent deed of the undivided half interest to the Memphis & Charleston Railroad Co., are clouds upon their title, and ought therefore to be recalled and canceled, and they pray relief accordingly, and also an account for rents.

There is also an allegation of fraud, consisting of false representations which induced their ancestor to make the deed (which will be hereafter noticed).   But whether this allegation is in aid of, and to give emphasis to the main purpose and scope of the bill, or whether it was introduced as a separate ground of relief, is very uncertain.

The bill submits to the adjudication of a court of chancery the questions, first, whether the grant is upon condition, and whether there has been a forfeiture of the estate, because of the nonperformance of the condition; and, secondly, if these questions should be decided for the complainants, then whether, thirdly, their ancestor and themselves have not by acquiescence, from 1855 to the time of bringing the suit, waived the right to claim a forfeiture; and if that proposition also shall be with the complainants, then it is claimed that the estate has revested, and that the deed of their ancestor to the Memphis & Charleston Railroad Co. is a cloud upon their title which ought to be removed.

But the reverse of those propositions is this one preferred by the appellees, that there is no condition at all in the deed; that the complainants do not aver that there were any words or terms in the instrument which point to or indicate a reversion of the estate, or its forfeiture, or manifest the idea that the grantor shall reclaim the estate, if certain things are not done.   It is not shown that the grant to the Memphis & Charleston Railroad Co. was upon the condition that the property shall be used for the purposes named, and if converted to other uses, then the estate shall

be forfeited. Nor does it appear that the grant was upon the pro-
viso that the property shall be used in a particular way. In Shep-
pard's Touchstone, p. 125, the author enumerates expressions that
serve to determine the quality of the estate, viz: " That the land
shall return to the feoffor," or " that he shall take it again," or that
the land shall revest." " These," says the author, " are good
words to give a reëntry." Conditions which go to defeat an estate,
according to all the authorities, are strictly construed. 4 Kent,
*supra ;* 17 N. Y., 34 ; 4 Gray, 140.

The complainants do not allege that depots have not been built
upon the land; that is impliedly conceded ; but it is averred that
machine shops and water stations have not been established upon
it. But the inquiry is at once started, If the land is used for that
purpose, is the forfeiture saved, or must it ensue if all the enum-
erated structures be not put upon it ?

It thus appears to admit of grave doubt, whether the grant is
subject to a condition subsequent. But the appellee presses the
further argument that the grantor, in his lifetime, made no com-
plaint, nor have his heirs since his death, from 1855, until April,
1875, a period of twenty years, of any misuse, or misappropria-
tion of the land, and that this protracted silence, unexplained by
the complainants, amounts in law, to a waiver of their right to in-
sist upon a forfeiture. Upon this state of the case the complain-
ants claim to be the " real owners of the property," and insist
that the deed of their ancestor of 1855, and the deed to the un-
divided half of the premises from the M. & C. R. R. Co. to the M.
& O. R. R. Co. of 1861, shall be canceled and vacated, as a
cloud upon their title. According to the established principles
which govern the court in administering that equity (see Banks
*v.* Evans, 10 S. & M., 62 ; Boyd *v.* Thornton, 13 id., 344 ; Hunt-
ington *v.* Allen, 44 Miss., 662 ; Carlisle *v.* Tindall, 49 id., 233),
the complainants encounter insuperable difficulties.

A court of equity always had the jurisdiction to protect the
title of the " true owner in possession," against adversary deeds and
instruments, which had been obtained by fraud, and which might

(after the evidence which would expose their true character, had become obscure or faded away) be set up to vex and endanger the "true owner."

The statute enlarges the principle so as to extend its benefits to the "real owner," whether in possession or not, so that he may apply for the cancellation of deeds and other evidences of title, which cast a cloud upon his own title. It has been several times repeated in the decisions, that it was not the policy of the statute to confer upon the court of chancery the right to adjudicate upon the relative value and merits of purely legal titles in all circumstances. "That the relief will not be granted unless the complainant clearly shows the validity of his own title and the invalidity of his opponents." " Nor will it be granted on a doubtful state of the case." The complainant " must be prepared to sustain the entire fairness of his own title."

Let us test the bill by these principles :

1. The complainants have not disclosed a good title, legal or equitable. They do not allege that their ancestor or themselves entered upon or made claim to the property for condition broken, and thereby declare an election, not to waive, but insist upon the right to reclaim the estate.

2. If the grant was upon condition subsequent, and there has been a breach of it, a court of equity will not entertain a bill to enforce a forfeiture, nor will the court be induced to depart from its uniform course, and take cognizance of 'that question because the jurisdiction is sought on the ground of removal of clouds from the title ; for the right of the complainants to a dispersion of the cloud is dependent upon a favorable adjudication of the first proposition, viz, that they are owners of the estate, by reason of a breach of the condition.

3. It is not clear and certain on the face of the bill, that the grant was conditional, or that there has been a breach of it, or that the complainants are not estopped by acquiesence (if a court of equity could maintain the subject), and, therefore, the complainants do not, within the just rule maintained in the above

cases, show that they are the "real owners." They come into a court of equity with a doubtful title, and ask in its support that muniments of an adversary title may be canceled. That cannot be done.

But there is another aspect of the bill noticed by the allegation of fraud. It is doubtful whether the pleader meant to assert the conveyance, for that reason, distinctly, presenting that as an alternative ground of relief. It is not enough to charge fraud generally, but the specific acts must be pointed out; the allegation must be made positively, if in the knowledge of the pleader, or if made upon information and belief, it must be charged as true. Allegations must be made so directly that if taken for confessed, a decree might be rendered, granting the relief. A *pro confesso* cannot reach further than the allegation, and would admit no more to be true than that the complainants had been informed that these representations had been made, and believed them to be true. That is not an admission of the fact. James and Mary McAlister *v.* Clopton, Ex'r, MSS. opinion; Spears *v.* Cheatham, 44 Miss., 71, 72.

But if the real complexion of this allegation is for a rescission of the contract, for the alleged fraud, the gravamen is, that the grantor was induced to part with the land upon the representation that these erections would be made, which would greatly enhance the value of his other lands adjacent. If that be the theory of this branch of the case, then the complainants or their ancestor ought to have claimed a rescission within a reasonable time after the diversion or misuse occurred. A right to rescind may be lost by acquiescence. 1 Sug. Vend., 384, § 27. If a party intends to rescind a contract on the ground of a violation of it by the other party, he must do it promptly, on the first information of such breach. Lawrence *v.* Dale, 3 Johns. Ch., 23; Dill *v.* Camp, 22 Ala., 258; McCulloch *v.* Scott, 13 B. Monr., 172. It was incumbent on Wm. Leslie, promptly to have protested against the erection of the hotel, express office and the other edifice, on the premises, if he intended to have relied upon these acts as a violation of the

contract. He would not be permitted to remain silent whilst money was thus being spent, and then object and claim a rescission or setting aside of the contract. To prevent misapprehension, we observe that these last remarks only apply to a view of the case as presented by the allegation of fraud, treating them as laying the foundation for a rescission. It may be further said, that rescission proceeds on the idea of a restoration of the parties to the *statu quo.*

We think there is error in overruling the demurrer.

The decree is reversed, and judgment will be rendered in this court, sustaining the demurrer and dismissing the bill, but without prejudice.