WM. B. HAWKINS and Wife *v.* M. B. COLEMAN, EXrx.

**Voluntary Conveyance.**

> A deed voluntarily made to vest title in the grantee, following up an implied wish of a deceased person, is valid and binding against the estate, and will not be set aside at a subsequent date because of matters arising *ex post facto.*

**Pleadings — Fraud — Evidence.**

> To support a bill that charges fraud, the evidence must show that some fraudulent act has been committed.

On September 12, 1875, appellee deeded to Mrs. Matt E. B. Hawkins a tract of eighty acres of land for a consideration of $600, and on January 24, 1884, filed a bill in the Chancery Court of Marshall county, charging that for divers acts of deceit on the part of Wm. B. Hawkins, husband of the said Matt E. B. Hawkins, she was induced to execute said deed, upon his promise to make payment for the land, or a full settlement by way of accounts rendered between complainant and W. B. Hawkins. In 1870 this land was sold to W. B. Hawkins by the late husband of complainant, for which notes were executed, and defendant was put in possession of the land. After the death of her husband, complainant voluntarily executed the deed to wife of defendant, it seeming to be in compliance with the wish of com-

A conveyance cannot be vacated at the instance of the grantor upon the mere ground that it was made without consideration. Though voluntary it is binding upon him. Day *v.* Davis, 64 Miss. 253, 8 So. 203.

It is not enough in a bill to charge fraud generally; the specific acts must be pointed out. Allegations, if the facts be in the knowledge of the pleader, must be made positively, or, if made upon information and belief, must be charged as true. The averments must be so specific that if taken for confessed a decree might be rendered granting relief. Railroad Co. *v.* Neighbors, 51 Miss. 412.

Where an action is brought to set aside a fraudulent conveyance the facts constituting the fraud should be positively alleged in the bill, if known to complainant, otherwise they should be alleged on information and belief; and hence a petition alleging fraud in general terms only is insufficient. McInnis *v.* Wiscasset Mills, 78 Miss. 52, 28 So. 725.

A bill in equity, to set aside a sale under a deed of trust on the ground of fraud, is demurrable, if it fail to state the facts upon which the charge of fraud is predicated. Weir *v.* Jones, 84 Miss. 602, 37 So. 128.

plainant's deceased husband to provide defendants with a home. The evidence showed a running account between the late E. W. Coleman and W. B. Hawkins, and that there was never a settlement between them, and long after the death of the said Coleman complainant sought to get the accounts settled, and did have a verbal arbitration, which resulted in a balance shown against defendant W. B. Hawkins of about $826. No evidence was offered showing that defendants used fraud or deceit or solicitation to get the deed made to Matt E. B. Hawkins nor in support of any of the allegations of fraud made in the bill.

From a decree for complainant, canceling the said deed, defendant appeals.

APPEALED from the Chancery Court of Marshall county, B. T. KIMBROUGH, Chancellor.

Reversed and discharged, May 10, 1886.

*Attorneys for appellant, Watson & Smith.*

*Attorneys for appellee, R. S. Smith and Strickland & Bates.*

Brief of J. H. Watson:

.* * * Now, we submit, an unconscientious advantage is necessarily an advantage obtained by unconscientious means, and if the testimony, even of the plaintiff herself, even tends to show the use of unconscientious means by the defendant in procuring said deed we have wholly failed to discover it. We have already considered the "promises and assurances" which complainant alleges were fraudulently made, and by reference to the testimony itself have shown that no such promises or assurances were made. By the deed the defendant acquired the legal title to the land. This was the object of the execution. As to the unconscientious use the defendants have made of the unconscientious advantage obtained by them over the complainant the record is silent.

Now the bill in this case proceeds solely upon the ground of fraud by the defendant, W. B. Hawkins, in procuring the deed from the complainant to his wife, and, we submit, unless fraud

is shown in that transaction by the testimony in the case the relief which she seeks must be denied her. "No relief can be granted except upon the case as made in the bill."

The conclusion is irresistible, we think, looking to all the testimony in the case that the complainant did just precisely what she intended to do when she executed the deed to the defendant, Matt E. A. Hawkins. According to the complainant's own testimony, Hawkins made no promise to induce her to make the deed. He promised nothing on condition that she would convey the land to his wife. She wanted to build him up. The defendant was very poor and overwhelmed with misfortune. Just a few days before he had sustained a loss by fire, which made him an object of charity, and which rendered it extremely doubtful whether he would ever be able to pay anything on the debt. He frankly told her his condition, that he did not know that he would be able to pay for the land, *just before* she made the deed. Where in all this case can a single circumstance be found to excite a suspicion of fraud. The complainant herself by her testimony repels the charges made in the bill.

Relying on this deed, the defendant goes to work and builds up again, and more than four years after its execution the bill is filed. Upon the state of facts we see no reason why the Statute of Limitations, of six years to the notes, and of three years to any claim arising out of the new contract which complainant says was made September 12, 1879, is not a complete bar to any recovery on the money and demand, and the absence of fraud on defendant's part certainly is an answer to so much of the bill as seeks to vacate the deed.

Brief of R. S. Stith:

\* \* \* He prepared the deed, under instructions that "the deed was not to release the land;" and again, on the subject of the deed, "she said" to Hawkins, that "he was to understand that the land was not to be released." Yet he went home and prepared a deed that did release the land, and Mrs. Coleman signed it, executed it without reading it or hearing it read. It is true he says he read it to her; but does it not strike the court as a little curious that he locates the old lady, when the deed was being read to her, as standing in the door of her house leading into the cookroom, with no one else present? They had been in the room

with Mrs. Stephenson a few moments before, conversing about the matter; why not read the deed to Mrs. Coleman then, in Mrs. Stephenson's presence? Why not read it in the presence of the magistrate before whom it was acknowledged? If he had said it was in either presence it might have been contradicted. Hence she is placed in the " door leading into the cookroom," with no one present but himself and Mrs. Coleman. The story is rather fishy, in view of the fact that Mrs. Coleman says so emphatically that " she never read the deed, nor heard it read." Remember, she was a very old lady and unaccustomed to business matters, her husband having but recently died, upon whom she had always relied in these matters. Then was this deed fairly and honestly obtained? Was not this transaction fraudulent? If, after getting such an advantage, unconscientious in the extreme, although his original purpose may have been innocent, he seeks to make an unfair and fraudulent use of it, will the court permit him to do it?

But his defense is, that this deed was made in pursuance of a verbal gift of the land in controversy to Mrs. Hawkins (the wife of said W. B. Hawkins), by complainant's said husband and testator during his lifetime, which complainant approved and promised to carry out, and that said deed was but the consummation of that gift. On this theory, the whole case of the defendants rests. It stamps W. B. Hawkins with fraud in procuring the deed, for when you strip the transaction of the *gift* theory, and then look at the use he is now trying to make of that deed, it is not only an unfair advantage sought to be unconscientiously used, but a bold and naked fraud *ab initio.* * * *.

If he meant no fraud when he obtained the deed, yet, as soon as he found that, by Mrs. Coleman's confidence he had acquired such an advantage, he uses it fraudulently or unconscientiously, the court will not permit him to do it. Dickerson *v.* Mays, 60 Miss. 388; Hart *v.* Boyd, 54 Miss. 547, 550.

But the court below, upon all the testimony in the case, thought there was fraud, and it set aside the deed. This court will not reverse the decree, unless manifestly wrong.

If a decree be right upon the whole case, it will not be reversed because the wrong reason is assigned.

We are confident that substantial justice has been done, and that the decree of the chancellor should not be disturbed.

As to the power of the complainant to make the deed in this case, under the will of her testator, we refer to the following authorities. Gouldsmith v. Coleman, 3 Law & Eq. 328; Water Valley Mfg. Co. v. Seaman, 53 Miss. 655, 659, 660; Elliot v. Connell, 5 S. & M. 106; Glenn v. Thistle, 23 Miss. 45.

Brief of W. M. Strickland:

The deed of September 12, 1879, was procured by fraud and should not be permitted to stand.

The conduct of Hawkins in delaying a settlement with Coleman in his lifetime, and with complainant after his death, and his promise, at the time the deed was made, to settle and pay the balance, and his subsequent refusal to do so, were but parts of a fraudulent scheme to get the land without full payment. He states in his answer to the nineteenth direct interrogatory, that he never did have a settlement with Thos. B. Coleman, "but some few little ones with complainant."

The fact that the land debt was barred, and not paid, did not entitle Hawkins or his wife to a deed to the land. The payment of the purchase money is a condition precedent to the right to be invested with the title. This is positively settled by the case of Cook v. Reynolds et al., 58 Miss. 243–251.

Under the general doctrines of equity jurisprudence, courts of equity are not "absolutely bound" by the Statutes of Limitations; and section 2695, Code 1880, does not change the general rule. And where there is the slightest taint of fraud in concealing the true condition of demands between parties mutually dealing, the offending one should not be allowed to acquire any rights by lapse of time.

It is, therefore, submitted for the consideration of the court whether the delay of complainant in filing this bill should prejudice her.

Hawkins' possession of the land did not become adverse until the debt was barred, and only some five or six years had elapsed from that time to the filing of the bill. 62 Miss. 263.

The court will not permit the defendants to avail themselves of the deed of September 12, 1879, because it gives them an unconscientious advantage over complainant. 43 Miss. 666; 48 Miss. 207.

The gift of the land set up by the defense is too preposterous for serious consideration. In less than two months after the date of the alleged gift, viz., December, 1875, Thos. B. Coleman made his will, giving the property to others. Moreover, he retained possession of the land notes. Viewed in the light of Coleman's conduct, the gift is a most improbable story, altogether out of joint with the reason, experience, and judgment of mankind. Besides, if true, being in parol it is null and void.   *   *   *

OPINION — CAMPBELL, J., delivered the opinion of the court:

The gravamen of the bill is the charge that the deed made on the 12th September, 1875, was executed under such circumstances as entitled the complaint to have it vacated. It is the lien in her way, and until destroyed effectually stops her progress. Hence the assault upon the deed, which is alleged to have been obtained by fraudulent devices and assurances on the part, of Hawkins, who thereby obtained an unfair advantage of the complainant, which he has used *unconscionally* to her detriment. The truth of this averment is the gist of the controversy. We have fully considered the pleadings and the evidence, and reached the conclusion that the bill is not maintained. The testimony of the complainant and her daughter is not in harmony with the theory of the bill, which on its face appears to be improbable. The testimony of both these persons as to the conversation between complainant and Hawkins about the state of indebtedness between them when the deed was about to be made negatives the theory of the bill. It seems strongly probable that the deed was voluntarily made to vest title in the grantee, in execution of the wish of Mr. Coleman in lifetime, concurred in by the complainant at the time of making the conveyance, but which she desired to recede from at a subsequent date, because of matters arising *ex post facto*. It is doubtless true that Hawkins had not paid for the land, and it is unwise in the complainant to convey it to his wife, and thus put it out of her power to coerce payment by controlling the title, but nothing is shown to justify a decree annulling what she did, of her own free will, and without being inveigled by any one, as far as we can discover.

It may be morally just for Hawkins to pay $826, as found by McKinney to be due, but as the notes given for the land are barred by limitation, and have never been legally revived, and the

Statement of the Case.

charge of fraud made, as to the giving of the deed is not supported, the complainant has not shown any right which a court can enforce.

The fact that Mrs. Coleman under some circumstances could not prejudice the estate makes no difference in this case.

Decree *reversed* and bill dismissed at the costs of the complainant in both courts.