## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1998-SA-01293-SCT

*OXY USA, INC.*

*v.*

*MISSISSIPPI STATE TAX COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/03/1998 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JEFFERSON D. STEWART |
| | VICTORIA W. THOMAS |
| ATTORNEYS FOR APPELLEE: | BRAD D. WILKINSON |
| | BOBBY LONG |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 4/13/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/4/2000 |

**BEFORE PITTMAN AND BANKS, P.JJ., AND COBB, J.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. This case arises on appeal, pursuant to Miss. Code Ann. § 27-25-23 (Supp. 1999) and §§ 27-65-47 & -49 (1990), from a suit filed by OXY USA Inc. (OXY) against the Mississippi State Tax Commission (Commission) to recover improper severance taxes in the amount of $431,254.47, including interest and penalties. The assessment of severance taxes was appealed by OXY to the Commission Board of Review on April 15, 1994, which upheld the severance tax assessment. OXY paid the amount in full on October 17, 1994, and filed suit on January 24, 1997, in the Chancery Court of the First Judicial District of Hinds County. Trial was held before the Chancellor Patricia D. Wise on May 27, 1998. On June 30, 1998, the Chancellor issued her Memorandum Opinion and Order affirming the assessment and dismissing OXY's complaint. Final judgment was entered on August 3, 1998, and OXY perfected this appeal on August 25, 1998.

### STATEMENT OF THE FACTS

¶2. In the mid-1980's, the drastic reduction in the prices of oil and natural gas discouraged producers from large scale prospecting and exploration. Mississippi reacted to this "crisis" by giving potential producers a tax break from the oil and gas severance tax. This concession, commonly referred to as the "production exemption" is found at Miss. Code Ann. § 27-25-703, allowing, in part, that:

(3) Natural gas and condensate produced from any wells for which drilling is commenced after March 15, 1987, and before July 1, 1990, shall be exempt from the tax levied under this section for a period of two (2) years beginning on the date of first sale of production from such well.

¶3. OXY has been in the business of oil and natural gas exploration and production in Mississippi for the past thirty years. In 1987, OXY struck oil in Wilkinson County. The find is named Thanksgiving Field. Between October 1987 and May 1989, OXY drilled fourteen wells which produced oil and gas from the Thanksgiving Field. All of these wells were first drilled during the qualifying period for the Production Exemption. All but seven wells produced and sold their oil and gas production for two full years prior to December 1989.

¶4. Over the one-year period from July 1988 to November 1989, oil and gas were produced and sold from these seven wells in what is generally referred to as primary recovery. In November 1989, however, the Lower Tuscaloosa A Sand Fieldwide Unit was established in the Thanksgiving Field by the Mississippi State Oil and Gas Board (the Board) in order to institute a secondary recovery project within the field. The Board found that a secondary recovery project was feasible and would result in the recovery of more oil and/or gas.

¶5. In December 1989, as part of the secondary recovery project, OXY began injecting gas produced from Lower Tuscaloosa pool, as well as gas purchased from the nearby "Frio wells" and pipeline OXY operated, into the Lower Tuscaloosa reservoir. Between December 1989, and May 1991, 2.3 billion cubic feet (bcf) of gas produced from the seven wells of the Thanksgiving Field were re-injected into the Thanksgiving Field Secondary Recovery Project. All of this gas was produced during a period that qualified it for the production exemption. During that period, OXY purchased 2.4 bcf of gas from the Frio Wells and pipeline and injected that gas into the Thanksgiving Field Secondary Recovery Project. Much of this gas was also qualified for the production exemption.

¶6. The gas produced from the Lower Tuscaloosa reservoir between December 1989 and May 1991 was sent to two central facilities in the field where it was separated, compressed, heated and dehydrated. As a result, the nature and the composition of the gas were significantly changed into "pipeline quality" gas. This refined gas was then commingled with the pipeline quality gas purchased from the Frio Wells and pipeline and injected through three injection wells into the "gas leg" of the Lower Tuscaloosa reservoir. This injected gas was used to maintain reservoir pressure sufficiently high enough to continue producing oil from that pool.

¶7. By January 1993, OXY had determined that the maximum benefits of the secondary recovery project had been achieved and the injection of gas ceased. OXY began recovering and selling the previously injected gas, so that by November 1993, quantities of gas equivalent to the amount of pipeline gas purchased and injected (2.4 bcf) and quantities of gas produced from the seven wells and refined into pipeline gas (2.3 bcf) had been recovered and sold.

¶8. As a result of the injection of this purchased and produced and refined pipeline gas, significant barrels of oil were produced and sold from the Thanksgiving Field between December 1989 through January 1993. Over 730,000 barrels of oil were produced from this Thanksgiving Field, over and above what would have been produced without this gas injection. Over $630,000 in severance taxes was paid on these additional barrels of oil.

¶9. OXY reported the production of this purchased gas and the gas produced from the seven wells and re-injected as exempt from severance taxes on its severance tax returns. The Commission audited those returns and agreed that it could not assess a tax for the 2.4 bcf of purchased gas which OXY recovered in 1993, but the Commission refused OXY's claimed production exemption for the 2.3 bcf of gas produced from the seven wells which was refined then re-injected and recovered in 1993. The Commission claimed that the production exemption did not apply to gas produced for the second time outside the exemption period. This position was upheld by the Board of Review and the Chancery Court.

## STATEMENT OF THE ISSUES

**I. WHETHER THE OXY GAS, ONCE EXEMPT FROM SEVERANCE TAX UNDER MISS. CODE ANN. § 27-25-703(3), COULD LATER LOSE THAT EXEMPTION BY VIRTUE OF OXY'S USE OF THE GAS -- INJECTING IT BACK INTO THE GROUND TO MAXIMIZE RECOVERY FROM THE OIL FIELD AND LATER RECOVERING AND SELLING IT.**

**II. IF SO, WHETHER THE RECOVERED OXY GAS, AFTER BEING REFINED, INJECTED BACK INTO THE EARTH, AND THEN, RECOVERED, WAS GAS THAT WAS "PRODUCED OR SEVERED FROM THE SOIL OR WATER. . . IN ITS NATURAL, UNREFINED OR UNMANUFACTURED STATE," AS REQUIRED BY MISS. CODE ANN. § 27-25-703 FOR A LEVY OF SEVERANCE TAX.**

**III. WHETHER THE ASSESSMENT WAS ARBITRARY AND CAPRICIOUS BECAUSE IT WAS INCONSISTENT WITH THE COMMISSION'S PRIOR ADVISORIES ON THE ISSUE AND, AS WELL, WITH THE COMMISSION'S TREATMENT OF SIMILAR GAS.**

## DISCUSSION OF THE LAW

¶10. This Court has stated:

Our Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.

*Mississippi State Tax Comm'n v. Mississippi-Ala. State Fair*, 222 So.2d 664, 665 (Miss. 1969). The decision of an administrative agency or board is afforded great deference upon judicial review by this Court even though we review the decision of the chancellor de novo. *St. Dominic-Jackson Mem. Hosp. v. Mississippi State Dep't of Health*, 728 So.2d 81, 83 (Miss.1998); *Mississippi State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So.2d 1238, 1240 (Miss.1991).

¶11. With regard to the interpretation of statutes by state agencies, unless the agency's interpretation is repugnant to the plain meaning of the statute, this Court will defer to the agency's interpretation. *Mississippi State Tax Comm'n v. Lady Forest Farms, Inc.*, 701 So.2d 294, 296 (Miss.1997); *see also* **Kerr-McGee Chem. Corp. v. Buelow**, 670 So.2d 12, 16 (Miss.1995); **Tower Loan of Miss., Inc. v. Mississippi State Tax Comm'n**, 662 So.2d 1077 (Miss.1995); **Mississippi State Tax Comm'n v. Dyer Inv. Co.**, 507 So.2d 1287, 1289 (Miss.1987).

### I. WHETHER THE OXY GAS, ONCE EXEMPT FROM SEVERANCE TAX UNDER MISS. CODE ANN. § 27-25-703(3), COULD LATER LOSE THAT EXEMPTION BY VIRTUE OF OXY'S USE OF THE GAS -- INJECTING IT BACK INTO THE GROUND TO MAXIMIZE RECOVERY FROM THE OIL FIELD AND LATER RECOVERING AND SELLING IT.

¶12. Here the Court is called upon, as a matter of first impression, to interpret the meaning and application of the following production exemption statute:

(3) Natural gas and condensate produced from any wells for which drilling is commenced afer March 15, 1987, and before July 1, 1989 shall be exempt from the tax levied under this section for a period of two (2) years beginning on the date of first sale of production from such wells.

Miss. Code Ann. § 27-25-703(3) (amended 1988). Where a statute is unambiguous, the Court must apply the statute according to its plain meaning, refraining from principles of statutory construction. **City of Natchez v. Sullivan**, 612 So.2d 1087, 1089 (Miss. 1992).

¶13. The Chancellor determined that this production exemption statute is clear on its face. She further found that when the re-injected gas was first produced by OXY it was exempt, but that when the gas was produced for the second time in June 1990 during the secondary recovery project the exemption period had ended. Because the statute does not provide for second time production exemptions, the Chancellor held that the decision of the Commission was neither arbitrary nor capricious, and consequently, affirmed the Commission's ruling. The Chancellor essentially determined that the gas was exempt going into the ground, but was not exempt when it was retrieved.

¶14. OXY drilled its wells between October 1987 and May 1989, well within the statutory limit. OXY then produced and sold gas from the wells in question beginning in July 1988, commencing the two-year exemption period which ended in July 1990. OXY chose to re-inject the gas in December 1989 as part of a secondary oil recovery project in an attempt to produce more oil from the Thanksgiving Field. In January 1993, OXY realized the Thanksgiving Field had been depleted and decided to retrieve the gas it had previously injected and sell it. This retrieval could be viewed as a second production under the statute which occurred after the two year exemption period. Consequently, the exemption would not apply, and taxes would be assessed. That is the rationale espoused by both the Chancellor and the Commission.

¶15. The Commission, however, carries the analysis further.[1] Also arguing a plain reading of the production exemption statute, the Commission asserts that because the legislature set the date of the running of the exemption from the "date of first sale of production" that the exemption only applies to the gas *sold* during the exemption period. The Commission contends that because OXY elected to re-inject the gas in a secondary recovery project such use was already exempt under Miss. Code Ann. § 27-25-703(2). Under this section, gas used for re-pressurization is exempt, or more appropriately the tax is deferred, until such

gas is retrieved/produced and used for "sale, transport, storage, profit, or for commercial use." Miss. Code Ann. § 27-25-703(1) and (2) (amended 1988). In the Commission's view, OXY fell under this exemption and was subject to taxation upon second production and sale.

¶16. OXY's argument also centers on a plain reading of the statute. OXY points out that the statute does not define any particular use to which the produced gas must be put in order to be exempt. This reading is correct. OXY also contends that once the exemption takes place, such gas is exempt regardless of how it is used, once exempt always exempt.

¶17. The gas injected by OXY was exempt when it was first produced. OXY then chose to use it to re-pressurize an oil reservoir. Nowhere does the statute read that the gas must be put to a certain use. The "date of first sale" language is merely used to establish a starting point for the exemption period. Consequently, OXY asserts that the gas falls under the blanket production exemption of § 27-25-703(3) rather than the tax deferral provision for gas used in secondary recovery projects under § 27-25-703(2). Since the gas was produced during the exemption period, it is exempt from ever being subject to a severance tax.

¶18. Although OXY's all-encompassing exemption argument applies to the Chancellor's rationale of secondary production, that alone merely represents a different reading of the statute. The analysis, however, must be carried further. Both OXY and the Commission agree that the severance tax accrues at the time of production. Indeed, the Chancellor admits as much when she found that the gas when first produced was exempt under the production exemption statute.

¶19. Under the long-standing exemption for gas used for re-pressurization, the time of tax accrual does not change, but rather the time for collection of the taxes is deferred until the injected gas is retrieved and determined to be used for "sale, transport, storage, profit or for commercial use." Miss. Code Ann. § 27-25-703(1) & (2) (amended 1988). For tax purposes, such retrieval is not viewed as a second production, but rather as an extension of the original production which was put to a tax exempt or tax deferred *use*. Consequently, if the gas were produced during an exemption *period* in which the imposition of the tax was exempt then there would be no tax to defer. This argument is consistent with both logic and a plain reading of the statute. Such argument counters both the Chancellor's "second production" ruling and the Commission's interpretations of the statute.

¶20. Obviously, the Commission and OXY differ in their understanding of the exemption period, and it is OXY's burden of clearly proving its right to an exemption. *Mississippi State Tax Comm'n v. Medical Devices, Inc.*, 624 So.2d 987, 990-91 (Miss. 1993). The Commission asserts that the two-year exemption period only exempts the gas which is sold within the two-year exemption period. According to the Commission, if the gas is to be exempt it must be sold during the exemption period.

¶21. This approach is problematic. Miss. Code Ann. § 27-25-703(1) states that there is "levied. . . annual privilege taxes upon every person. . . producing or severing gas. . . *for sale, transport, storage, profit, or for commercial use*." (emphasis added). If the Commission's view is followed, a tax would be levied if gas were produced and stored during the exemption period but sold after the expiration of the exemption period. Such gas was not produced for a second time, but neither was it sold during the exemption period. Obviously, such gas would be exempt from statutorily imposed taxation at the time of storage but not at the time of sale.

¶22. A similar situation would arise if company A produced, re-injected, extracted and then sold gas during the exemption period to company B, which in turn injected that gas into another pool and later retrieved it after the exemption period. Logically, A would be exempt and B would be taxed based upon second production. Carried to its logical end, the Commission's interpretation could lead to multiple taxation upon the same gas. Such a result is undesirable. Conversely, if the Commission does not enforce its own interpretation universally, then its actions are not only illogical but arbitrary.

¶23. Under OXY's view of once exempt always exempt, the gas would not be subject to taxation. The "once exempt always exempt" interpretation is both textually and logically consistent while the Commission's interpretation is fraught with inconsistencies.

> **II. IF SO, WHETHER THE RECOVERED OXY GAS, AFTER BEING REFINED, INJECTED BACK INTO THE EARTH, AND THEN, RECOVERED, WAS GAS THAT WAS "PRODUCED OR SEVERED FROM THE SOIL OR WATER. . . IN ITS NATURAL, UNREFINED OR UNMANUFACTURED," AS REQUIRED BY MISS. CODE ANN. § 27-25-703 FOR A LEVY OF SEVERANCE TAX.**

¶24. OXY claims that the Commission is without authority to levy a tax because the retrieved gas was not in its "natural, unrefined or unmanufactured" state upon production as required by § 27-25-703. This argument has no merit as OXY's only witness and expert testified that while the gas did not contain as many contaminates upon retrieval it still had to be refined in order to be labeled "pipeline quality." The retrieved gas went through the same processes as it did before injection into the reservoir.

> **III. WHETHER THE ASSESSMENT WAS ARBITRARY AND CAPRICIOUS BECAUSE IT WAS INCONSISTENT WITH THE COMMISSION'S PRIOR ADVISORIES ON THE ISSUE AND, AS WELL, WITH THE COMMISSION'S TREATMENT OF SIMILAR GAS.**

¶25. This Court has stated:

> The terms "arbitrary" and "capricious" are open-textured and not susceptible of precise definition or mechanical application. "Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,--absolute in power, tyrannical, despotic, non-rational,-- implying either a lack of understanding of or a disregard for the fundamental nature of things. "Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.

*Mississippi State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So.2d 1238, 1240 (Miss. 1991) (quoting *In re Housing Authority of City of Salisbury*, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952)).

¶26. OXY contends that the actions of the Commission in reaching its interpretation of the production exemption and assessing taxes were arbitrary and capricious. They base their contention on a series of letters between OXY and the Commission; disparate treatment between OXY gas that was produced and re-injected and gas OXY purchased which was also re-injected; and the fact that Southern Natural Gas

Company has consistently "produced for a second time" gas from its Muldon Gas Storage Field yet has never been assessed a severance tax.

¶27. The three letters read in pertinent part:

> May 1, 1987 . . .
>
> Because all gas produced from a qualified well is exempt from severance tax, the need to distinguish between non-exempt and exempt production does not exist.

(Letter to OXY from State Tax Commission).

> July 2, 1990. . .
>
> Section 27-25-703(3) allowed an exemption from severance tax on all production for two years from gas wells during the same spud period [March 15, 1987 through June 30, 1990]. The two year exemption begins from the date of first sale.

(Letter to OXY from State Tax Commission).

> May 11, 1993. . .
>
> Mississippi State Oil and Gas Board told OXY to report the gas from the subject leases [purchased gas] as injection and not to pay taxes (severance and maintenance) until the gas is returned and sold at the Thanksgiving Field Unit, (unless the gas when returned is exempt because of STEP, etc.)
>
> Per our conversations May 6, 1993, each of you has confirmed that the gas produced from the subject wells was not subject to taxes as long as the gas was being injected into a reservoir and not sold. . . .
>
> You both state also that taxes will need to be paid when the gas is reproduced and sold from the Thanksgiving Oil Field Unit (Tuscaloosa Sand) (unless exempt because of STEP).
>
> [OXY contends that STEP is an internal reference to the Severance Tax Exemption Program under § 27-25-703(3). See Appellant's Brief at 28 n.10.]

(Letter to Mississippi Oil and Gas Board and State Tax Division from OXY).

¶28. OXY argues that these letters constitute an admission by the Commission that OXY's produced gas which was re-injected -- that *all* gas -- was exempt under § 27-25-703(3). OXY contends that these advisory letters are in direct conflict with the Commission's later decision and rationale to assess severance taxes. The Commission asserts that the letters reveal a consistent position, explaining that referring to all gas as being exempt was accurate because between the two-year production exemption of § 27-25-703(3) and the long-standing use exemption of § 27-25-703(2) all gas was exempt during the two year window.

¶29. OXY also points out that the Commission initially espoused a sale or use oriented argument before finally relying upon the "produced for a second time" argument. This, however, merely examples a change in statutory interpretation from the Board of Review to the Commission's final interpretation and decision, which was affirmed by the Chancellor.

¶30. OXY also challenges the treatment of gas produced by OXY which was then refined into pipeline quality and re-injected into Thanksgiving Field compared to the pipeline quality gas which was purchased by OXY and then re-injected. The OXY gas was assessed severance taxes under the secondary production rationale while the purchased gas was assessed no taxes. The Commission asserts that the purchased gas was sold to OXY thus the tax accrued to the producer[2] and not OXY. This is the proper application for gas sold to another for the purpose of re-pressurization according to § 27-25-703(3).

¶31. There is, however, the question of secondary production. The purchased gas accrued tax liability only once yet was produced a second time. According to the Commission, the severance tax is only assessed once even though gas may be twice produced. This practice contradicts the secondary production interpretation.

¶32. According to practice, gas produced during the exemption period accrues tax liability which is then exempt under the production exemption. That same gas can then be sold, re-injected, retrieved (second production) and sold again without tax accruing or being assessed. Such practice is a logical contradiction of the second production rule affirmed by the Chancellor.

¶33. With OXY, however, there was a different scenario. OXY produced gas during the exemption period which was later found to be exempt under the production exemption statute by the Chancellor. The gas was then refined, re-injected, retrieved and sold. The only difference between OXY's gas and the purchased gas was that severance taxes were assessed against OXY. Both gases accrued tax liability upon production. Both were afforded tax exemption under the production exemption at this time. Both were produced a second time. Both were then sold, but only the OXY gas was taxed. The disparity cannot be reconciled.

¶34. OXY offers further evidence of disparate treatment of similar gas by pointing out the tax treatment of gas from the Southern Natural Gas Company's Muldon Gas Storage Field. Since 1971 produced gas refined into pipeline quality has been pumped into Muldon Field and then later withdrawn a second time and sold. At no time has this second produced gas been assessed taxes. Under the secondary production argument such gas would be taxed.

¶35. Based upon past acts and arguments, as well as present rationales, the Commission apparently views the Production Exemption as applying only to gas produced for sale or sold during the exemption period.[3] Such application is in fact contrary to the Commission's own final argument which was affirmed by the Chancellor. The tax assessment by the Commission is arbitrary and capricious as applied to OXY.

## CONCLUSION

¶36. Rejecting the "produced for a second time" argument, as well as the assertion that gas produced during the two-year exemption window must be sold during that time, we hold that the gas produced by OXY falls under the blanket protection of the production exemption of Miss. Code Ann. § 27-25-703(3) (amended 1988) and that the tax assessment by the Commission was arbitrary and capricious. Thus, the Chancellor erred in dismissing OXY's complaint and denying its requested relief.

¶37. We reverse the judgment of the Hinds County Chancery Court, and we render judgment that OXY USA Inc. recover from the Mississippi State Tax Commission $431,254.47 plus interest at the annual rate of 8% from and after January 24, 1997, the date of the filing of this action, *Stevens Enters., Inc. v. Stone*, 226 Miss. 806, 825-26, 85 So.2d 461, 467-68 (1956), until paid.

¶38. **REVERSED AND RENDERED.**

**PRATHER, C.J., BANKS, P.J., SMITH, MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. While the Commission abandoned this argument in favor of the "produced a second time" argument, a discussion is relevant as the actual application of tax assessment seems to incorporate both a "use or sale" theory as well as the secondary production argument. Such application is discussed in Part III.

2. Some of the purchased gas was produced during the exemption period, sold to OXY, and apparently afforded the exemption.

3. Actually, based upon these letters between OXY and the Commission, as well as a plain reading of § 27-25-703, the Commission views the production exemption as applicable to any use which tracks the statutory language, i.e. "sale, transport, storage, profit or for commercial use."