BARNES, J.,
for the Court:
¶ 1. The City of Jackson (also referred to hereafter as “the City”) conveyed the property at issue in this appeal to Greater Mount Calvary Community Development Corporation (GMCCDC) on June 24, 2003. In accordance with Mississippi Code Annotated section 21-17-l(3)(a) (Rev.2001 & Supp.2003), the deed contained a reverter clause. When GMCCDC failed to pay property taxes, the property was sold by tax sale to Wachovia Bank and subsequently conveyed to Rebuild America, Inc. (Rebuild America). After filing a complaint to quiet title, Rebuild America filed a motion for summary judgment. The City filed a cross-motion for summary judgment, asserting that the property reverted to it by operation of law and that the tax sale was void. The Chancery Court of Hinds County awarded summary *1107 judgment to Rebuild America which the City of Jackson now appeals. We find that there are genuine issues of fact as to whether statutory notice of the expiration of redemption period was properly given to GMCCDC and whether the City of Jackson waived this argument by not raising it until the hearing for summary judgment. However, as we find that the City’s reversionary interest in the property was sufficient to require statutory notice of the right of redemption to the City, we reverse the chancery court’s grant of summary judgment for Rebuild America and render judgment in favor of the City of Jackson.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On June 24, 2003, the City of Jackson conveyed the subject property at issue in this appeal via quitclaim deed to GMCCDC. The “QUITCLAIM DEED WITH POSSIBILITY OF REVERTER” conveyed all the City’s interest in the property:
Provided that the Grantee begins construction of housing for persons of low and moderate income within 1 year of the date of this conveyance, substantially completes construction of the housing for persons of low and moderate income within 2 years of the date of this conveyance and, thereafter, any housing constructed on the property hereby conveyed is sold by Grantee to persons of low and moderate income, otherwise the interest conveyed by this deed shall re-veri to the Grantor without the Grantor taking any further action in law or equity to reenter the property.
(Emphasis added). A reversion clause was required by Mississippi Code Annotated section 21 — 17—l(3)(a) (Rev.2001 & Supp. 2003), which stated as follows:
Any deed or conveyance executed pursuant hereto shall contain a clause of reverter providing that the bona fide not-for-profit corporation or public school district may hold title to such lands only so long as they are continued to be used for the civic, social, educational, cultural, moral, economic or industrial welfare of the community, and that title shall revert to the municipality in the event of the cessation of such use for a period of two (2) years.
(Emphasis added).[1]
¶ 3. The quitclaim deed was filed with the Chancery Clerk of Hinds County. However, GMCCDC failed to meet the conditions set forth in the quitclaim deed. Further, GMCCDC failed to pay 2004 taxes, and the property was sold in a tax sale on August 29, 2005. The tax sale remained on file in the chancery clerk’s office for the two-year statutory redemption period. The record reflects that notice of the right of redemption was given to GMCCDC by publication and service by deputy sheriff (posted on the door of the business office).[2] Compare Miss.Code Ann. § 27-43-3 (Rev.2006). The City of Jackson was not given notice.
*1108 ¶ 4. Meanwhile, on July 14, 2006, the Jackson City Council proposed an order to rescind GMCCDC’s interest in the property based upon its failure to begin construction. In January 2007, the City mailed two separate letters to GMCCDC’s counsel, advising him that the property had reverted to the City for the failure to meet conditions outlined in the quitclaim deed. The first letter, dated January 16, 2007, simply stated that “the property has reverted back to the city.” The second letter, dated January 31, 2007, reiterated that the property had reverted to the City and further requested that a construction lien and the delinquent taxes attributable to GMCCDC be remedied. The second letter also noted that the City had contacted the tax assessor’s office regarding the delinquent taxes and “because the property reverted to the City before the end of 2005,” the 2006 taxes were not owed by GMCCDC.
¶ 5. On September 10, 2007, a tax deed was issued to Wachovia Bank and was later filed with the chancery clerk’s office. Wachovia Bank then conveyed the subject property via quitclaim deed to Rebuild America on October 31, 2007. This deed was recorded with the chancery clerk. Rebuild America filed a complaint to quiet and confirm tax title on December 11, 2007, naming as defendants, GMCCDC and the City of Jackson.[3] The City filed a response to the complaint on January 10, 2008, which merely asserted that there was no money owed for judgment liens and/or lis pendens. GMCCDC failed to respond to the complaint, and an entry of default judgment was entered against GMCCDC on August 11, 2008.
¶ 6. On March 17, 2008, Rebuild America filed a motion for summary judgment on the basis that the City had failed to reenter the subject property and, thus, had waived any legal possessory rights pursuant to the possibility of reverter. On April 21, 2008, Rebuild America also requested a temporary restraining order as the City was currently conducting construction activities on the property.[4] In the “Defendant City of Jackson’s Response to Motion for Summary Judgment and Motion for Leave to File Amended Answer,” the City claimed that the property, by operation of law, had reverted to the City or, in the alternative, that the City had continually manifested its determination to take advantage of the breach by virtue of its letters to GMCCDC. Then, on May 7, 2008, the City filed a supplemental response/cross-motion for summary judgment which claimed that: (1) the subject property reverted to the City of Jackson by operation of law; (2) the tax sale was void as the City was a beneficiary pursuant to Mississippi Code Annotated section 27-43-5 (Rev.2006) and did not receive notice of the right of redemption; (3) Rebuild America took title subject to the reverter clause; and (4) alternatively, in the interest of public policy, the City should retain its interest in the subject property.
¶ 7. A hearing on the motions was held on July 23, 2008. At the hearing, in addition to the above-stated claims in its motion pleadings, the City also argued that *1109 notice to GMCCDC of the right to redeem the property was deficient pursuant to Mississippi Code Annotated section 27-43-3. Rebuild America contended that the City lacked standing to bring this claim for deficient notice. In his November 19, 2008 order, the chancellor held that the property did not automatically revert by operation of law; therefore, the City had no interest in the property that would entitle it to receive notice. He also stated that notice to GMCCDC “was properly made” and granted summary judgment in favor of Rebuild America.
¶ 8. The City filed a motion on December 1, 2008, requesting that the chancery court amend its findings to reflect that the City was the record owner of the property and that the tax sale was void as the City did not receive notice of the right of redemption. The City also filed a notice of appeal to this Court on December 17, 2008. The court entered its final judgment on January 16, 2009, granting Rebuild America’s summary-judgment motion and denying the City’s cross-motion for summary judgment.[5]
STANDARD OF REVIEW
¶ 9. This Court reviews a trial court’s grant or denial of a motion for summary judgment de novo. Alexander v. Wardlow, 910 So.2d 1141, 1143 (¶2) (Miss.Ct. App.2005) (citing Lake Castle Lot Owners Ass’n v. Litsinger, 868 So.2d 377, 379 (¶ 10) (Miss.Ct.App.2004)). “Summary judgment shall be granted ‘if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.’ ” Id. (quoting M.R.C.P. 56(c)). In opposing the motion, the non-movant “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e). All evidence must be viewed “in the light most favorable to the non-moving party.” Scott v. Gammons, 985 So.2d 872, 874 (¶ 5) (Miss.Ct.App.2008) (citing Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995)). “If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment should be entered in that party’s favor.” Monsanto Co. v. Hall, 912 So.2d 134, 136 (¶ 5) (Miss.2005) (citation omitted).
DISCUSSION
¶ 10. Mississippi Code Annotated section 27-43-1 (Rev.2006) states that in a tax sale:
The clerk of the chancery court shall, within one hundred eighty (180) days and not less than sixty (60) days prior to the expiration of the time of redemption with respect to land sold, either to individuals or to the state, be required to issue notice to the record owner of the land sold as of 180 days prior to the expiration of the time of redemption!.]
(Emphasis added). Notice must be given to the “reputed owner” by certified mail, personal service delivered by the sheriff, and publication in the appropriate newspaper. Miss.Code Ann. § 27-43-3 (Rev. 2006). All three notice requirements must be satisfied for the redemption notice to be in compliance with the statute. Rebuild *1110 Am., Inc. v. Estate of Wright, 27 So.3d 1202, 1204 (¶ 6) (Miss.Ct.App.2010) (citing Viking Invs., LLC v. Addison Body Shop, Inc., 931 So.2d 679, 681 (¶ 6) (Miss.Ct.App. 2006)). “Public policy ‘favors and protects the owner of land from loss by its sale for taxes.’ ” Alexander v. Gross, 996 So.2d 822, 825 (¶ 11) (Miss.Ct.App.2008) (quoting Carmadelle v. Custin, 208 So.2d 51, 55 (Miss.1968)). Therefore, “[s]tatutes dealing with land forfeitures for delinquent taxes should be strictly construed in favor of the landowners.” Rebuild Am., Inc. v. Milner, 7 So.3d 972, 974 (¶ 7) (Miss.Ct. App.2009) (quoting Brown v. Riley, 580 So.2d 1234, 1237 (Miss.1991)). “Any deviation from the statutorily mandated procedure renders the sale void.” Id. (quoting Roach v. Goebel, 856 So.2d 711, 716 (¶ 29) (Miss.Ct.App.2003)).
¶ 11. This statutory notice of the right to redeem stems from a due-process concern that an owner should not be deprived of property. See Rush v. Wallace Rentals, LLC, 837 So.2d 191, 200 (¶ 28) (Miss.2003). The Mississippi Supreme Court has stated that “the most important safeguard involving any person who stands to suffer from some official action is prior notice. This gives the recipient an opportunity to prepare himself and be heard. Notice, therefore, by far is the paramount factor and purpose of all process.” Brown, 580 So.2d at 1237 (citations omitted).
¶ 12. The City brings several assignments of error regarding the chancery court’s grant of summary judgment, which we will now address.
I. Whether the City of Jackson had standing to assert that notice to GMCCDC was insufficient and whether the chancellor erred in holding that statutory notice to GMCCDC was sufficient.
¶ 13. The City claims that GMCCDC failed to receive proper notice of the right of redemption; therefore, the tax sale is void. Rebuild America, however, does not address the merits in its brief to this Court regarding whether the notice to GMCCDC was proper. Rather, it argues that: (1) the City cannot maintain this assignment of error since the issue of notice was not brought in the original pleadings, and (2) the City lacked standing to assert this claim since the City failed to make an entry to assert its rights to the property. In his order, the chancellor summarily held that “[njotice was properly made to the record owners of the property, [GMCCDC], prior to the expiration period, but redemption of said property was not had.” Thus, he did not address the issue of whether the City had standing to contest the notice given to GMCCDC or whether the issue had been waived.
A. Standing
¶ 14. The City cites to Moore v. Marathon Asset Management, LLC, 973 So.2d 1017 (Miss.Ct.App.2008), for the proposition that the City had a “colorable interest” and standing to assert that the tax sale was void based upon the insufficient notice to GMCCDC. In Mississippi, parties have standing to sue “when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.” Id. at 1021 (¶ 17) (citations omitted).
¶ 15. In Moore, Edward Chapman was the record owner of the subject property. Upon Chapman’s failure to pay taxes, the property was sold at a tax sale. Prior to the end of the redemption period, the property was sold in foreclosure to Napoleon Moore. It was acknowledged that, due to the timing of the sale, Moore was not the record owner under section 27-43-1 for purposes of notice. Id. at 1022 (¶ 21). *1111 However, the Mississippi Supreme Court found that the notice to Chapman was insufficient. It further held that, since Moore bought the property in foreclosure prior to redemption period, Chapman’s title was lost. Id. at 1021 (¶ 18). Accordingly, although Moore was not the owner of record and not entitled to any notice, “he gained an interest in the disputed property prior to the expiration of the redemption period .... [which] was sufficient to give him standing to bring his claim to challenge the validity of the tax sale.” Id. at 1022 (¶ 21).
¶ 16. We find that the City has standing to argue the issue of GMCCDC’s notice. Neither party has contested that the conditions set forth in the quitclaim deed were not met by GMCCDC and that a breach of the conditions occurred. Rather, the issue between the parties is the nature of the City’s conditional future interest: whether it is a right of entry, as argued by Rebuild America, or a possibility of reverter, as claimed by the City .of Jackson. Traditionally, the right of entry for breach of condition differs from a possibility of reverter in that it requires an election to terminate the estate; a possibility of reverter requires no such election. Lewis M. Simes and Allan F. Smith, The Law of Future Interests, Ch. 8 §§ 242, 269-70 (3rd ed.2002). A possibility of re-verter is “distinguished from the right of entry for breach of condition factually only by the use of different language in the instrument of conveyance.” Id. at Ch. 9 §§ 282, 330.
¶ 17. The chancellor cited to Yazoo & M.V.R. Co. v. Lakeview Traction Co., 100 Miss. 281, 294, 56 So. 393, 396-97 (1911), for the proposition that the future interest created by the City was merely a right of entry upon breach of condition. In that case, the conveyance was “made upon express condition and agreement” that, if the depot was removed from the land, it would “at once revert.” Id. Our supreme court stated:
It is a correct principle of law, as announced by counsel for appellant, that upon a breach and nonperformance of a condition annexed to the grant of a freehold estate the title conveyed is not void, but is only voidable by the acts of the grantor or his heirs, who must take advantage of the condition, and repossess himself of the estate by actual re-entry, or by some act equivalent thereto, and manifesting an intent to terminate the estate. This rule applies, even though the land is expressly conditioned to revert upon breach or nonperformance of the condition[.]
Id. Similarly, in Pearson v. City of Louisville, 539 So.2d 1046, 1048 (Miss.1989), the supreme court held that a provision, which stated that land must be used for railroad business or the land “shall revert” to the grantors, created a “right of entry for condition broken.” In Hathorn v. Illinois Central Gulf Railroad Co., 374 So.2d 813, 817 (Miss.1979), the supreme court found that a reverter provision, stating that if the railroad depot built on the property be abandoned, the land would revert to the grantors, “is a condition subsequent and requires a re-entry, on breach of the condition.” These cases are based, at least in part, on the proposition that equity will not “lend its aid to enforce a forfeiture[.]” Memphis & Charleston R.R. Co. v. Neighbors, 51 Miss. 412, 418 (1875); see also Yazoo & M.V.R., Co., 100 Miss. at 281, 56 So. at 395 (“the law does not look with favor upon forfeitures”).[6]
*1112 ¶ 18. None of these cases, however, construe a conveyance expressly disclaiming the necessity of re-entry such as the one before us. Further, these “right of entry” cases are distinguishable as the re-versionary language in those cases was not required by statute. One question before this Court is how to reconcile such cases with section 21-17-l(3)(a). If a statute “is plain and unambiguous, we must afford the statute its plain meaning, refraining from principles of statutory construction.” Barton v. Blount, 981 So.2d 299, 303 (¶ 13) (Miss.Ct.App.2007) (citing OXY USA, Inc. v. Miss. State Tax Comm’n, 757 So.2d 271, 274 (¶ 12) (Miss.2000)). When interpreting a statute, this Court’s “chief objective is to interpret the statute consistent with the true intent of the [Legislature.” Id. (citing Anderson v. Lambert, 494 So.2d 370, 374 (Miss.1986)). The use of words such as “shall” and “will” in a statute or regulation are considered mandatory in nature. McFadden v. State, 580 So.2d 1210, 1215 (Miss.1991) (citation omitted). In this instance, the statute distinctly states that “title ” might be held “only so long as ” the lands were used for certain purposes. Miss.Code. Ann. § 21 — 17—l(3)(a) (emphasis added).
¶ 19. In their treatise, The Law of Future Interests, Simes and Smith explain:
The typical words used to create a right of entry for breach of condition are “on condition that,” “upon the express condition,” “provided that,” “but if,” and similar language. No express words to the effect that the property shall revert to the grantor on forfeiture are necessary, though such phraseology is not uncommon and makes it more certain that a right of entry for breach of condition has been created.... If the instrument provides that on breach the estate granted “shall be void” or “shall revert” it may still result in the creation of a right of entry even though such expressions tend to indicate an automatic termination of the estate granted. The word “void” is here, as in many other places, read as if it were “voidable.” On the other hand, if the language is “so long as ” or “until” without words of reentry, one may readily infer that a special limitation and not a condition subsequent was intended. Thus, if Blackacre be granted to A and his heirs so long as he keep the fences in repair, A has a fee simple with a special limitation and his grantor has a possibility of reverter, not a right of entry.
Simes, Ch. 8 §§ 247, 278-79 (emphasis added).[7]
¶ 20. Mississippi courts have not been entirely consistent on the effect of a possi *1113 bility of reverter. For example, in Memphis & Charleston Railroad Co., 51 Miss. at 417, after a discussion of a condition subsequent, the supreme court stated: “Strictly speaking, a grant defeasible by condition subsequent, all that remains in the grantor is the possibility of reverter, or right of entry on condition broken. Such entry, or some tantamount act, is necessary to revest the estate.” However, in Ricks v. Merchants National Bank & Trust Co. of Vicksburg, 191 Miss. 323, 2 So.2d 344, 345 (1941), the grantor had conveyed to the City of Vicksburg, certain property “for use solely5’ as a site for a public school, and “subject to the condition that if5 the City did not, within the next ten years, erect such school, “the title to said land shall, ipso facto, on the expiration of said period, revert to and become vested in [grantor].” The Mississippi Supreme Court noted, without citation of authority, that a purported conveyance of the property by the City was ineffective as the City “had no title to convey ... after the expiration of the ten year period during which there had been a failure to erect the school building required by the terms of the deed.” Id. The supreme court labeled the original grantor’s interest a “possibility of reverter” and made no mention that any re-entry had been made by the representatives of the deceased grantor.
¶21. In the case before us, certain language used in the deed — “provided” and “shall revert” — are typical of a condition subsequent with right of entry. See Simes and Smith, Ch. 8 §§ 247, 278. However, the deed expressly disclaims the necessity for re-entry and labels the right a “possibility of reverter” in the title of the deed. Further, section 21 — 17—l(3)(a) of the Mississippi Code Annotated states that “title” from the municipality might be held “only so long as” the land is used for certain purposes. This language reflects a limitation which leaves the grantor with a possibility of reverter. See Simes and Smith, Ch. 8 §§ 247, 278-79.
¶ 22. Regardless of whether a possibility of reverter grants automatic title or a right of entry in Mississippi, we find that either is sufficient to confer standing on the City to challenge the sufficiency of notice to GMCCDC. Even if entry is required, the City wrote letters in January 2007 to GMCCDC’s representative, expressing its intention for the property to revert immediately since GMCCDC failed to meet the conditions in the quitclaim deed. Also during this period, the City conferred with the tax assessor’s office to have the property removed from the tax rolls. Further, the record reflects that at some point prior to April 21, 2008, the City physically entered the property to begin construction, resulting in an expenditure of approximately $500,000. Accordingly, we find that the City has standing to assert a claim of insufficient notice to GMCCDC as it had a clear, “colorable” interest in the property, which will be adversely affected by the suit regardless of whether the quitclaim deed conferred a possibility of re-verter or a right of entry upon a breach of condition.
B. Notice to GMCCDC
¶ 23. Rebuild America is correct that the issue of whether notice to GMCCDC was proper was not included in the City of Jackson’s pleadings filed with the chancery court. Rather, the issue of insufficient notice was first asserted by the City at the hearing on the motions for summary judgment. The record reflects that the sheriff failed to serve GMCCDC personally. Instead, the sheriff posted the notice of the tax sale on the door of GMCCDC’s place of business on July 4, 2007, which is insufficient under the requirements of the statute. Mississippi Code Annotated section 27-43-3 states that a sheriff is required to *1114 “serve personal notice as summons issued from the courts are served.” GMCCDC is a domestic corporation; therefore, under Rule 4(d)(4) of the Mississippi Rules of Civil Procedure, the proper method of service is to deliver “a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process.” M.R.C.P. 4(d)(4) In Tucker v. Williams, 7 So.3d 961, 967 (¶ 14) (Miss.Ct.App.2009), this Court found that “ ‘[pjosting to the [plropert/ is clearly not an authorized means to serve process upon a corporate entity.” See also Viking Investments LLC, 931 So.2d at 682 (¶ 8) (“[p]osting a notice to the property when the intended recipient cannot be located is clearly not one of the methods for perfecting personal service under Rule 4”). At oral argument, counsel for Rebuild America admitted that notice was posted and that, “perhaps,” notice was insufficient under the statute.
¶ 24. Thus, the chancellor’s finding that GMCCDC received proper notice is not supported by the record. However, Rebuild America asserted that it was not given the opportunity to refute this claim made by the City, since the City had failed to assert this claim until the hearing before the chancellor. Notice is important in summary judgment proceedings, and parties to a summary judgment motion must be given an “opportunity to submit materials in response to the motion.” Peavey Elec. Corp. v. Baan U.S.A., Inc., 10 So.3d 945, 956 (¶ 26) (Miss.Ct.App.2010) (citation omitted).
¶ 25. Accordingly, we find that there are issues of fact as to whether the notice of the right of redemption was properly served to GMCCDC under the statute, and whether the City waived this argument by not asserting it until the hearing on the motions for summary judgment. If the only issue before this Court was whether notice to GMCCDC was properly given, then we would reverse and remand for further proceedings. However, we find the next issue of whether the City of Jackson was entitled to separate, statutory notice is dispositive of this appeal.
II. Whether the City of Jackson was entitled to statutory notice of the expiration of the redemption period.
A. Notice As a Beneficiary
¶ 26. Mississippi Code Annotated section 27-43-5 states that a chancery clerk has an affirmative duty “to examine the record of deeds, mortgages and deeds of trust in his office to ascertain the names and addresses of all mortgagees, beneficiaries and holders of vendors liens of all lands sold for taxes” and provide notice to all such “lienors.” (Emphasis added). However, the City of Jackson does not contend that it holds a mortgage, deed of trust, or vendor’s lien on the subject property. Instead, the City cites Black’s Law Dictionary 64 (2nd pocket ed.2001), for the proposition that a beneficiary is “one designated to receive something as a result of a legal arrangement or instrument,” and claims that since the City is “entitled to receive something, title to the property, as a result of an instrument, the Quitclaim Deed,” it is a “beneficiary” under the statute. We find this argument misplaced. Under section 27-43-5, the only beneficiaries entitled to notice are beneficiaries that are also lienors. The most obvious example would be a beneficiary under a deed of trust.[8] The City of Jackson retained no *1115 lien on the property; therefore, it is not entitled to notice as a “lienor” under this statute.
B. Notice As a Record Owner
¶ 27. Although not argued in its briefs, the City of Jackson, both in its pleadings and at the hearing in chancery court and in oral argument to this Court, asserted that it should have received notice as the record owner since the subject property automatically reverted to the City by operation of law. Although section 27-43-1 does not provide a definition of “record owner,” Black’s Law Dictionary 1215 (9th ed.2009) defines a record owner as “[a] property owner in whose name the title appears in the public record.” The City claims that it was a record owner as the deed caused the property to revert immediately upon the breach by GMCCDC.
¶ 28. Rebuild America, in its brief to this Court, submits that the City was not entitled to notice as the owner; rather, it contends that GMCCDC was the record owner on the date of the tax sale and at the expiration of the two-year redemption period. Rebuild America’s primary argument is that the City merely had a right of re-entry, not a legal possessory interest in the property. In its order granting summary judgment, the chancery court agreed with Rebuild America, holding that the property did not automatically revert to the City of Jackson by operation of law. To support this holding, the chancellor cited to Yazoo & M.V.R. Co., 100 Miss. at 294, 56 So. at 396-97, which states:
[Ujpon a breach and nonperformance of a condition annexed to the grant of a freehold estate the title conveyed is not void, but is only voidable by the acts of the grantor or his heirs, who must take advantage of the condition, and repossess himself of the estate by actual reentry, or by some act equivalent thereto, and manifesting an intent to terminate the estate. This rule applies, even though the land is expressly conditioned to revert upon breach or nonperformance of the condition [.]
(Emphasis added). The chancellor found that the City’s letters to GMCCDC were “insufficient to satisfy the requirements of Mississippi law and, likewise, are ineffective to notify subsequent purchasers or the Hinds County Chancery Clerk.” The chancery court further found that the City had “failed to properly perfect its claimed title to the property” since it did not sufficiently act “to notify the Hinds County Chancery Clerk or any third party purchaser of an intent to re-enter the property or to reclaim record title ownership of same.” The court concluded that section 27-43-5 “was not intended to require notice to those who simply retain a right to re-enter without some ownership interest in the property.”
¶ 29. We agree with the chancellor that as the statute requires notice to the “record owner of the land sold,” the City was not record owner of the land by virtue of the breach by GMCCDC; any reversion of the property was not a matter of record. The question before this Court is whether, on its face, the deed’s reversionary language conferred on the City of Jackson the right to receive statutory notice of the right of redemption.
¶ 30. We find that it does. The Mississippi Supreme Court in Brown, 580 So.2d at 1237, noted that section 27-43-3 “contemplates that each owner shall receive the notice required by the statute.” (Emphasis added). The quitclaim deed conveyed “all of the [City’s] rights, title and interest” in the property and provided *1116 that, unless certain conditions were met, “the interest conveyed by th[e] deed” would “revert” to the City. Neither party cited any authority in their briefs to argue that this type of conditional future interest is a type of “ownership” entitled to notice of the right of redemption under the statutes.
¶ 31. We return to basic principles in order to understand the nature of the interest reserved by the City in the quitclaim deed. “The fee simple is the largest possible interest which one can create in land. It is regarded as of infinite or potentially infinite duration.” Simes and Smith, Ch. 2 §§ 62, 44. Both a possibility of reverter and a right of entry for breach of condition are devices used by an “owner of land ... to convey an estate of the same quantum as his own and yet compel the conveyee to refrain from a certain activity or to perform certain acts with reference to the land.” Id. at Ch. 8 §§ 241, 266 (emphasis added).
¶ 32. The New Hampshire Supreme Court presented an excellent analysis in Lyford v. City of Laconia, 75 N.H. 220, 72 A. 1085, 1089 (1909), of the interest created:
Whether the plaintiffs right is a possibility of reverter upon a determinable fee, or a right of entry for breach of a condition subsequent, he had ... no right to the land and no possession of it. “Wherever the gift is of a fee, there cannot be a remainder, although the fee may be a qualified or determinable one. The fee is the whole estate. When once granted, there is nothing left in the donor but a possibility or right of reverter, which does not constitute an actual estate. All the estate rests in the first grantee, notwithstanding the qualification annexed to it.” Whether the event upon which the plaintiff might come into ownership of the land would ever happen was mere speculation.... The plaintiff did not own the land taken. He was not an owner in fee, in reversion, or in remainder. He had no subsisting title in the land, but only a possibility that it might revert to him by the happening of the event upon which the estate of the society was determinable.
(Internal citation omitted). By definition, a possibility of reverter is created “[w]hen a grantor conveys a fee simple determinable, one that is subject to being cancelled by the occurrence of a certain event.” MSPRAC-ENC § 62:25. The “fee simple determinable constitutes the entire estate throughout its continuance ... [and] retains its defeasible quality, however, until the happening of the stated event by which it is to be determined, or until it is converted into a fee simple absolute.” Elmore v. Austin, 232 N.C. 13, 59 S.E.2d 205, 211 (1950).
¶ 33. Other courts have found, in various contexts, that a possibility of reverter does not create an ownership since the grant of the fee-simple determinable conveys the entire estate. In Mount Olivet Cemetery Association v. Salt Lake City, 164 F.3d 480, 485 (10th Cir.1998), the United States conveyed a fee-simple determinable estate to Mt. Olivet, retaining a possibility of reverter. The United States Court of Appeals for the Tenth Circuit held that the reserved interest was not sufficient to “trigger the government ownership exclusion provision” in the applicable statute as any interest the federal government had, by virtue of its possibility of reverter, was “speculative, and inconsistent with a characterization of the property as property ‘owned ... by the United States government.’ ” (citing Utah Code Ann. § 10-9-105). In Choctaw, O. & G.R. Co. v. Mackey, 256 U.S. 531, 539, 41 S.Ct. 582, 65 L.Ed. 1076 (1921), the United States Supreme Court determined that al *1117 though a “possible reversionary interest” was owned by the Creek Nation, the railroad, with its “limited fee” was “the absolute owner of the land” for purposes of levying a tax assessment. The United States Court of Appeals for the Tenth Circuit also held in Woodville, Oklahoma v. United States, 152 F.2d 735, 738 (10th Cir.1946), that for the purposes of a taking by eminent domain, when a grantee’s interest is “is a fee simple, the entire estate is in him, and the rights of the grantor, whatever they may be called, and however they might be enforced in equity in case of an unlawful use of the property, are not an estate or interest in the land, and so are not property in the constitutional sense.” (Citation omitted).
¶ 34. However, in Hathorn v. Illinois Central Gulf Railroad Co., 374 So.2d 813, 814, 816 (Miss.1979), the Mississippi Supreme Court stated that “[t]he reservation of the reverter was a reservation of an estate and is property.”[9] Further, Mississippi follows the minority view that owners of a reversionary interest may be entitled to compensation under an eminent-domain taking. In Columbus Greenville Railway Co. v. City of Greenwood, 390 So.2d 588, 589 (Miss.1980), an 1888 handwritten deed conveyed a strip of land in fee simple to the railroad company, with the understanding “that should said tract of land cease to be used for railway track and depot, then and in that case the same shall revert to the heirs of the grantors herein.” When the City of Greenwood condemned the land in eminent-domain proceedings almost 100 years later, the issue on appeal was whether this language in the conveyance “reserved a transferrable, compensa-ble interest” to the successors in interest of the original grantors. Id. The Mississippi Supreme Court reasoned that to follow the “majority rule” would be “not equitable ... [and] not consistent with other legal principles related to such existing estates in land.” Id. at 592 (quoting Hemphill v. Miss. State Highway Comm’n, 245 Miss. 33, 145 So.2d 455, 463-64 (1962)).
¶ 35. In Hemphill, the Mississippi Supreme Court stated:
[T]he owner of a future interest must have his “day in court,” or its equivalent, before a claim affecting it can effectively secure judicial sanction. This rests upon the constitutional provision for due process. Hence a living owner of a future interest is generally a necessary party to any litigation affecting it. This same principle should apply to a proceeding to condemn or take property by the state.
[[Image here]]
In summary, the precedent and statutory history of the law of this state place an independent value and significance on future interests, whether “vested” or not. A future interest, such as the exec-utory one owned by appellants, is property which now exists. The privilege of possession and enjoyment is future and not present, but it is an existing interest. Furthermore, Missfississippi] Constitution] Sec[tion] 17 was intended to protect all interests in property, and to prevent the state from taking the same without due compensation to the owners.
Hemphill, 145 So.2d at 461-62 (internal citations omitted).
¶ 36. The Columbus court held that the reversionary interest was both compensa- *1118 ble and “capable of valuation.”[10] The supreme court affirmed two-thirds of the compensation award to the holder of the reversionary interest and one-third to the railroad company. Columbus, 390 So.2d at 589. Based on this decision, we requested additional briefing from the parties regarding whether the holding in the Columbus case is applicable to this issue.
¶ 37. Not surprisingly, the City contends that Columbus is applicable and that, as the City is the holder of a vested reversionary interest under the terms of the quitclaim deed, it is entitled to notice of the right of redemption. Further, the City argues that it holds a stronger position than the defendants in Columbus as the property in that case had not reverted to the holders of the reversionary interest. However, Rebuild America asserts that the City's reversionary interest does not render it an “owner” pursuant to sections 27-43-1 and 27-43-3. Rather, it claims that the City of Jackson merely holds a future interest and that the chancery clerk is not required to give notice to holders of reversionary or future interests.
¶ 38. Rebuild America attempts to support its position, citing State v. Wray, 117 Miss. 566, 78 So. 360 (1918), for the proposition that the chancery clerk is only required to notify the person assessed with the property at the time of the sale. However, we find this is an erroneous interpretation. In Wray, the supreme court held that the language of the notice of tax-sale statute “charges the clerk with the duty of giving the notice to the owner of the land[.]” Wray, 117 Miss. at 573, 78 So. at 361.
¶ 39. We have found one case directly dealing with this issue of notice of a tax sale to a holder of a future interest. In Donaldson v. Ritenour, 105 Pa.Cmwlth. 383, 524 A.2d 1044, 1046 (1987), the Commonwealth Court of Pennsylvania held that the grantors who held a reversionary interest, which followed a life estate, were entitled to notice of a tax sale as “the extinction of their interest in the subject property without prior notice would contravene due process principles.” The court further reasoned: “We discern no reasonable basis on which to distinguish the due process notice required to protect the interests of creditors and mortgagees ... from the due process notice necessary for the appellees’ vested interest here in question.” [11] Id.
¶ 40. This view is based upon the due-process concerns surrounding the failure to notify a party whose property interests might be affected. As noted in Hemphill, “the owner of a future interest must have his ‘day in court,’ or its equivalent, before a claim affecting it can effectively secure judicial sanction.” Hemphill, 145 So.2d at 461. We determine that it would be a violation of due process to construe section 27-43-1 in such a way as to allow the City’s reversionary interest to be extinguished without notice. Our supreme court has stated that: “If possible, courts should construe statutes so as to render *1119 them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.” Estate of McCullough v. Yates, 32 So.3d 403, 412 (¶ 27) (Miss. 2010) (quoting Richmond v. City of Corinth, 816 So.2d 373, 375 (¶ 4) (Miss.2002)). Therefore, we construe Mississippi Code Annotated section 27-43-1’s reference to “record owner” to include a holder of a reversionary interest such as the City’s in this case.
¶ 41. In Mennonite Board of Missions v. Adams, 462 U.S. 791, 799, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court held: “Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, ... if its name and address are reasonably ascertainable.” (Emphasis added). Our own supreme court recently stated that Mennonite does not obligate the tax assessor “to comb through the land records to identify individuals who might appear to have an interest in the land’s minerals.” Aarco Oil & Gas. Co. v. EOG Resources, Inc., 20 So.3d 662, 669 (¶ 24) (Miss.2009) (citing Davis Oil Co. v. Mills, 873 F.2d 774, 789 (5th Cir.1989) (“a search of the conveyance records to identify parties with mineral interests would be unduly burdensome and is a task beyond the routine examination of land records that was involved in Mennonite.”))
¶ 42. In the case before us, the reverter language was on the face of the quitclaim deed to GMCCDC, and the deed was entitled in bold, capitalized letters, “QUITCLAIM DEED WITH POSSIBILITY OF REVERTER.” The City of Jackson’s re-versionary interest in the property was, thus, “reasonably ascertainable.” It did not obligate the chancery clerk to search any further than the most recent conveyance of record. Under the circumstances of this case, we conclude that the City of Jackson was entitled to receive statutory notice of the expiration of the redemption period. We are not called upon to decide whether notice would be required if the interest did not appear on the face of the most recent record of title.
¶ 43. Based on the foregoing, we reverse the chancery court’s grant of summary judgment in favor of Rebuild America and its denial of the City’s motion for summary judgment, and we render summary judgment in favor of the City of Jackson. Any further issues on appeal are rendered moot.
¶ 44. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ. CONCUR.

. When the statute was revised in 2007 to provide authority for a municipality to sell, convey, or donate abandoned or blighted property, the Legislature again inserted a requirement for a reverter clause. See Miss. Code Ann. § 21 — 17—l(I2)(c) (Rev.2007) (title to such property conveyed by a municipality “will revert ... if the person or entity to whom the property is conveyed does not fulfill the purpose for which the property was conveyed and satisfy all conditions imposed on the conveyance within two (2) years of the date of the conveyance”) (emphasis added).

. The sheriff's receipt, dated July 4, 2007, stated that he posted a copy of the notice "on a door of the defendant’s usual place of abode.” The date of the published notice is not in the record.

. Three other defendants were named in the complaint — Eleanor Faye Peterson, as District Attorney for Hinds County; Jim Hood, as Attorney General for the State of Mississippi; and Hinds County. These defendants failed to appear, as none had any interest in the subject property; thus, default judgments were entered against these defendants.

. An affidavit by a City of Jackson employee, Leo Stevens, which was later filed by the City, confirmed that it had expended approximately $500,000 in federal funds on the development of the property. The record does not reflect, however, when the City made physical entry on the property.

. The City of Jackson’s post-trial motion is considered timely under Mississippi Rule of Civil Procedure 59(e), although it was filed more than ten days after the entry of the chancery court’s order, as it was the first day to file following a holiday weekend. Further, the City filed its notice of appeal prior to the court’s entry of final judgment. Therefore, it is “treated as filed after such entry and on the day of the entry.’’ M.R.A.P. 4(b).

. One noted treatise explains that while "equity will not enforce a forfeiture,” once "the person entitled to assert the forfeiture has taken possession of the land” as through re *1112 entry, "he may proceed in equity to quiet title by procuring the cancellation of the original conveyance by which he created the condition.” 1 Tiffany on Real Property § 213 (3rd ed. 1975) (citing, inter alia, Memphis & Charleston R.R. Co. v. Neighbors, 51 Miss. 412, 418 (1875) and Vicksburg & Meridian R.R. Co. v. Ragsdale, 54 Miss. 200, 216-17 (1876)).

. Sir William Blackstone wrote that when an estate is expressly limited by the words of its creation, "it cannot endure for any longer time than till the contingency happens upon which the estate is to fail, this is denominated a limitation [.]" Words of limitation include “so long as," "while " or "until." In these cases, "the estate determines as soon as the contingency happens ... and the next subsequent estate, which depends upon such determination, becomes immediately vested, without any act to be done by him who is next in expectancy.” In contrast, when an estate is "upon condition in deed " by such words as "upon condition," "so that," or "provided, ... the law permits it to endure beyond the time when such contingency happens, unless the grantor ... take advantage of the breach of the condition, and make either an entry or a claim in order to avoid the estate.” William Blackstone, 2 Commentaries, ⅛ 155.

. “[Deeds] of trust are three-party instruments with a grantor, grantee, and ... [a] beneficiary ... and a deed of trust conveys the property to a third party in trust for the *1115 benefit of the creditor.” 59 C.J.S. Mortgages § 17 (2009).

. In Hathorn, 374 So.2d at 816-17, property had been conveyed for “railroad purposes" and was “to revert” to the grantors should the depot be abandoned. The supreme court determined that the conveyance resulted in the creation of a condition subsequent requiring re-entry, rather than a limitation with an automatic re-entry.

. The supreme court in Columbus commended the "excellent discussion of reversionary interests, including right of entry for condition broken’ and ‘possibility of reverter’ ” in Hathorn. 390 So.2d at 591. However, the court found non-essential to the disposition of the case, "a discourse in semantics on the difference between a fee simple determinable and estate on condition subsequent, when a possibility of reverter is or is not alienable, or when a fee is qualified, what constitutes a naked possibility, a conditional limitation, or any other uncertain interest in lands.” Id.

. The Donaldson court held that since notice had not been given to the holders of the reversionary interest, the tax sale could not be given effect against their interests. 524 A.2d at 1046.